134

Raymond Eldon ARRAS *v.* STATE of Arkansas

CA CR 81-70                                    623 S.W. 2d 537

Court of Appeals of Arkansas
Opinion delivered November 4, 1981

*Warren H. Webster,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

LAWSON CLONINGER, Judge. Appellant Raymond Eldon Arras was convicted by jury verdict of theft by receiving and sentenced to three years in prison. For reversal he contends that his motion for mistrial should have been granted; that evidence seized at the time of arrest should have been suppressed; and that there was insufficient evidence to support the verdict. We find no error and the judgment of the trial court is affirmed.

After the State's first witness had been partially examined, during a court recess, Mrs. Stanley, a juror, received word that her father had died. No alternate juror had been chosen because the trial judge had anticipated a short trial. The Court called Mrs. Stanley's attention to her continuing duty to pay careful attention to the trial and offered to declare a mistrial. Mrs. Stanley explained that the death was not unexpected and she stated that she could give her undivided attention to the trial proceedings. The Court found that the juror was qualified to continue with the trial of the case and denied appellant's motion for mistrial.

Declaring a mistrial is an extreme and drastic remedy which should be resorted to only when there has been an error so prejudicial that justice could not be served by continuing the trial. *Chaviers* v. *State,* 267 Ark. 6, 588 S.W. 2d 434 (1979). The granting or denial of a motion for a mistrial lies within the sound discretion of the trial judge and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion is shown. *Chaviers* v. *State, supra.* Appellant alleges nothing on which this Court could base a finding of prejudice except his speculative statement that the situation created serious doubt as to Mrs.

Stanley's ability to devote full attention to the case being tried before her. Appellant cites no authority for his position and his argument that the trial court abused its discretion in denying the motion is not convincing.

When the evidence is viewed in the light most favorable to the appellee, which we must do on appeal, we find that the evidence seized at the time of appellant's arrest was properly submitted. Appellant was charged with theft by receiving after officers found stolen coins in a car in which appellant was a passenger. The car was wrecked after pursuit by the officer and the driver exited the vehicle, aggressively confronting the officer. The driver was arrested, handcuffed and placed near the squad car. The officer first observed appellant seated on the passenger side of the car with what appeared to be a blanket partially on his lap and partially on the floorboard between his legs. The officer ordered appellant out of the car, and when the officer attempted to move the blanket, which turned out to be a sleeping bag, out of his way, he discovered that the bag was too heavy to be picked up with one hand. At the time appellant was being taken out of the car the officer, believing there may have been weapons in the sleeping bag, looked in the bag and found a large number of coins. The coins were later determined to have been taken in a burglary committed six days before appellant's arrest. Appellant was initially placed under arrest for public intoxication and disorderly conduct.

Appellant cites no authority to support his contention that the sleeping bag and the coins were not admissible in evidence, and his argument is not persuasive. The officer was alone with two intoxicated persons, and one of them was belligerent. The contents of the sleeping bag were investigated because of the bag's unusual weight, and the search was made contemporaneously with the removal of appellant from the car and his arrest. The officer had reasonable cause to suspect the sleeping bag on the lap of appellant contained a weapon or other contraband, and the officer was entitled to search the bag contemporaneously with the arrest. A sleeping bag is not ordinarily used as a

receptacle for personal items, and the possessor is not entitled to as great an expectation of privacy as the owner of the two suitcases in the locked trunk of a car, as in *Scisney* v. *State,* 270 Ark. 610, 605 S.W. 2d 451 (1980), or the owner of the locked footlocker in the trunk of a parked car, as in *United States* v. *Chadwick,* 433 U.S. 1 (1977).

As Mr. Justice Hickman of the Arkansas Supreme Court pointed out in a dissenting opinion in *Moore* v. *State,* 268 Ark. 171, 594 S.W. 2d 245 (1980), the law of search and seizure has become a legal maze difficult to understand and impossible to administer. A recent decision of the United States Supreme Court, *New York* v. *Belton,* 450 U.S. 1028, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), may bring a degree of certainty to the law of search and seizure heretofore lacking. In *Belton,* the Court said:

> When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the *Chimel* case [*Chimel* v. *California,* 395 U.S. 752 (1969)] established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item.' *Chimel,* supra, at 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in the light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. *United States* v. *Robinson,* supra; *Draper* v. *United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329. Such a container may, of course, be searched *whether it is open or closed,* since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. (Emphasis supplied.)

Since *Belton* had not yet been decided when appellant was tried, the trial court obviously could not have relied on that decision, but on this appeal *Belton* is highly persuasive. *Belton* permits the admission of evidence seized as the coins were in this case, and we therefore hold that there was no error in the trial court's ruling.

Ark. Stat. Ann. § 41-2206 (Repl. 1977) provides that a person commits the offense of theft by receiving if he receives or retains stolen property, knowing that it was stolen, or having good reason to believe it was stolen. It further provides that the unexplained possesion or control of recently stolen property gives rise to a presumption that the person knows or believes that the property was stolen.

The test in determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Jones* v. *State,* 269 Ark. 119, 598 S.W. 2d 748 (1980). The State proved that appellant was in the unexplained possession of recently stolen property, the coins, because the sleeping bag containing most of the coins was in his lap and the remainder were in his pockets. The evidence was substantial and it was sufficient to support the verdict of the jury.

Affirmed.