Carl J. BLAIR, Haden DAVIS, Jr., and Terry
LANCASTER *v.* STATE of Arkansas

CA CR 85-34                                    696 S.W.2d 755

Court of Appeals of Arkansas
En Banc
Opinion delivered September 18, 1985

2

*Q. Byrum Hurst, Jr.*, for appellant Carl Blair.

*Herby Branscum, Jr.*, for appellants Haden Davis, Jr. and Terry Lancaster.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

LAWSON CLONINGER, Judge. In these appeals from their criminal convictions, appellants Davis and Lancaster raise four points for reversal, and appellant Blair raises five. We affirm the convictions of Davis and Lancaster and affirm the conviction of Blair on all points but one, which we reverse.

On January 2, 1984, two Arkansas Game and Fish Commission officers on patrol in Perry County discovered appellants Davis and Lancaster walking in a cemetery and appellant Blair sitting in a pickup truck nearby. Dogs were running nearby, and one of the appellants admitted that the dogs belonged to them. The officers examined appellants' hunting licenses and guns and found buckshot in Lancaster's shotgun. At the time, the use of buckshot was prohibited as it was muzzle loading season. After finding the buckshot in one weapon, the officers looked inside the cab and saw another round of buckshot in the floorboard. Next to it, beneath the passenger's seat, was a Tupperware cake box. One of the officers opened the box and found, in addition to more buckshot, a green leafy substance and scales. No citations were issued at that point, but the officers ordered appellants to drive to the Perry County Sheriff's office in Perryville in their own vehicle.

As the officers and appellants were leaving, more hunters appeared in another vehicle. The officers approached the other vehicle, leaving their own vehicle unguarded, and checked hunting licenses and guns. In the meantime, according to the officers, appellant Blair ran away and disposed of the cake box.

Appellants assert that there was no cake box and that Blair simply went to look for his dogs with the officers' permission. At trial one of the officers acknowledged that permission had been granted.

When it appeared that Blair would not return, the officers issued citations to Davis and Lancaster for failing to wear hunter orange, to Lancaster for attempting to take deer with a modern firearm in muzzle loading season, and to Davis for aiding and abetting. On February 7, 1984, the prosecuting attorney filed a felony information containing eight counts, charging appellants Davis and Lancaster with possession of a controlled substance with intent to deliver, tampering with evidence, breaking or entering, hindering apprehension, and failure to wear hunter orange, appellant Lancaster with unlawful hunting of wildlife in closed season with a modern firearm, and appellant Davis with aiding and abetting Lancaster in unlawful hunting in closed season with a modern firearm.

Motions to suppress any evidence regarding marijuana on the basis of an illegal, warrantless, non-consensual search were denied at a pre-trial hearing. At the conclusion of the trial, the jury found appellant Davis guilty of possession of a controlled substance, appellant Lancaster guilty of possession of a con- trolled substance and unlawful attempt to take deer with a modern firearm, and appellant Blair guilty of possession of a controlled substance, escape in the third degree, breaking or entering, and tampering with evidence. From those verdicts, appellants bring these appeals.

All three appellants argue, in their first point for reversal, that the trial court erred in denying their motions to suppress any evidence obtained from the warrantless and non-consensual search of the pickup truck. They contend that only the buckshot found in the one shotgun was illegal and that any buckshot that might be found in the vehicle itself was legal and hence could not constitute probable cause for a search.

The Arkansas Game and Fish Code provides, at § 01.00-B:

> Wildlife officers shall be commissioned by the Commission and shall, concurrently with the sheriffs, constables and

other peace officers throughout the State, have the right to apprehend persons detected violating any of the laws of the State enacted for the protection of game, fish, fur-bearing animals and other wildlife, and to take such offenders before any court having jurisdiction in the county where such offense is committed. Such persons shall also serve all processes issued by a court of competent jurisdiction relating to the enforcement of all laws pertaining to game, fish, fur-bearing animals and other wildlife of the State; to go upon any property outside of private dwellings; posted or otherwise, in the performance of their duties; to carry firearms while performing duties, and may with or without a warrant, according to law, conduct searches.

This section clearly authorizes wildlife officers to conduct warrantless searches within prescribed legal bounds. Those limitations are set forth in the Arkansas Rules of Criminal Procedure.

■. Under A.R.Cr.P. Rule 12.1(d), an officer may make a search incidental to an arrest "to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense." Additionally, A.R.Cr.P. Rule 12.4 provides that an arresting officer may search a vehicle "if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made." Nothing in either rule is inconsistent with the principle enunciated by the United States Supreme Court in *New York* v. *Belton*, 450 U.S. 1028 (1981), that when a law enforcement officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *See also Arras* v. *State*, 3 Ark. App. 134, 623 S.W.2d 537 (1981). ·

■ While the buckshot in the floorboard of the truck may not have been "criminally possessed," the officer who searched the passenger compartment was acting within the bounds prescribed by Rule 12.1(d). The buckshot could certainly be said to be "used in conjunction with the offense" of attempting to take deer with a modern weapon. The circumstance of finding a round

of buckshot in one of the guns and spotting another in the floorboard surely justified "a reasonable belief on the part of the arresting officer" that the truck contained items "connected with the offense for which the arrest [was] made."

Appellants Davis and Lancaster contend in their second point that there was insufficient evidence to convict them of possession of a controlled substance when no competent proof was offered concerning the actual existence of any marijuana on the scene. Their argument is based on the fact that no chemical analysis was conducted on the substance the officers found in the Tupperware container. We have held, however, in *Armstrong* v. *State*, 5 Ark. App. 96, 633 S.W.2d 51 (1982), that lay testimony and circumstantial evidence may be sufficient without the introduction of an expert chemical analysis to establish the identity of a questionable substance.

In the instant case, both officers testified concerning their training in the visual identification of marijuana and their experience in making arrests for possession. We have previously found such qualifications adequate for lay identification. In *Boyd* v. *State*, 13 Ark. App. 132, 680 S.W.2d 911 (1984), we ruled admissible the statement of a sheriff that the substance he had obtained from the appellant's residence was marijuana when the sheriff gave testimony regarding his previous law enforcement experience, his training in the visual identification of marijuana, and the hundreds of times he had actually seen marijuana.

An argument somewhat related to the above is raised in appellant Blair's second point and in appellants Davis and Lancaster's third point. They urge that there was insufficient evidence to prove that any of them either actually or constructively possessed the marijuana said to have been concealed in the Tupperware cake box. We are of the opinion, however, that the evidence demonstrates constructive possession.

In *Llewellyn* v. *State*, 4 Ark. App. 326, 630 S.W.2d 555 (1982), we quoted a definition of constructive possession found in *Cary* v. *State*, 259 Ark. 510, 534 S.W.2d 230 (1976):

> Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a

place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.

Joint occupancy of a place where contraband is found will not be sufficient in itself to establish possession or joint possession unless there are additional factors from which a jury may infer possession. *Booth* v. *State*, 10 Ark. App. 216, 662 S.W.2d 479 (1984). In the present case, as in *Llewellyn, supra*, not only was a shared vehicle involved, but the substance was found in the passenger compartment. Officer Harper testified at trial that appellants Blair and Lancaster asked him to throw the substance away and fine them for the buckshot instead. These factors were sufficient to enable the jury to infer constructive possession on the part of appellants.

Appellant Lancaster argues in his fourth point that the evidence was insufficient for the jury to find him guilty of unlawful attempt to take deer with a modern firearm. Testimony at trial revealed, however, that Lancaster had in his possession on January 2, 1984, during muzzle-loading season, a 12-gauge shotgun loaded with a round of buckshot. Although appellant Lancaster claimed that he was hunting rabbits, the fact that his gun was loaded with buckshot, ammunition used for killing deer, might suggest to a jury another intention. In addition, appellant Lancaster and his friends were found with dogs in a hunting area. The circumstances certainly entitled the jury to reach the conclusion that appellant Lancaster was hunting deer. As we have repeatedly held, the fact that evidence is circumstantial does not render it insubstantial. *Graham* v. *State*, 6 Ark. App. 376, 642 S.W.2d 342 (1982).

We find no reversible error in appellant Blair's third point, in which he contends that the evidence was insufficient to sustain his conviction on the charge of third degree escape. Ark. Stat. Ann. § 41-2812 (Repl. 1977) provides:

(1) A person commits the offense of third degree escape if he escapes from custody.

(2) It is a defense to a prosecution under this section that the person escaping was in custody pursuant to an unlawful arrest.

Blair left the cemetery area after the Game and Fish officers had detained the three young men and had searched their vehicle. Blair asserted that he had received permission to look for his dogs, which were running loose, and Officer Harper testified that he had told appellants that they could get their dogs if they wished to do so. Implicit in both the request and the approval, however, was the timely return of appellant Blair, with or without his dogs. When the officers returned to the vehicle, Blair had disappeared with the Tupperware cake box and was not seen again that day. The testimony presented to the jury a question of fact, and we conclude that there was substantial evidence for the jury to decide that appellant Blair was guilty of third degree escape as defined by the statute.

Finally, appellant Blair argues in his fourth and fifth points for reversal that the evidence was insufficient for the jury to find him guilty of breaking or entering and tampering with evidence. While we are convinced that there was sufficient evidence on both counts, we are compelled to merge the offense of breaking or entering with that of tampering with physical evidence and dismiss the former and affirm the latter.

Ark. Stat. Ann. § 41-2003 (Repl. 1977) provides, in pertinent part: "A person commits the felony of breaking or entering if for the purpose of committing a felony he enters or breaks into any . . . vehicle . . ." The offense is graded as a class D felony. One who "alters, destroys, suppresses, removes or conceals any record, document or thing with the purpose of impairing its verity, legibility, or availability in any official proceeding or investigation" commits the offense of tampering with physical evidence, under the facts of this case, where a controlled substance was involved, in a class D felony. The jury assessed a fine of $500 for each offense, with no imprisonment.

Convictions for more than one offense are prohibited by Ark. Stat. Ann. § 41-105(1)(a) (Repl. 1977) when, as here, "one offense is included in the other." In the instant case, the charges of breaking or entering and tampering with physical evidence were based upon the same elements, *i.e.*, appellant Blair's breaking into the Game and Fish officers' vehicle to remove the Tupperware cake box. Ark. Stat. Ann. § 41-105(2)(a) states that a lesser included offense is one "established by proof of

the same or less than all the elements required to establish the commission of the offense charged." Up through the point where Blair entered the vehicle to remove the container the elements necessary to prove the commission of the two offenses were identical. Because the element of actual removal was also required for tampering with physical evidence, we find it appropriate to merge the two felonies into one. Thus we affirm appellant Blair's conviction for tampering with physical evidence and reverse and dismiss his conviction for breaking or entering.

Affirmed in part; reversed and dismissed in part.

CRACRAFT, C.J., not participating.