GRAIN DEALERS MUTUAL INSUR-
ANCE COMPANY, Appellant,

v.

Kimberley K. CADY, Respondent,

James DiIoia, Respondent,

James Leslie Coleman, et al., Defendants,

Minnesota Valley Country Club,
Respondent,

Minneapolis Claims Association, et
al., Defendants.

No. 81–784.

Supreme Court of Minnesota.

April 23, 1982.

---

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and Robert M. Frazee, Minneapolis, for appellant.

Brian T. Carlson, Minneapolis, for Cady.

Geraghty, O'Loughlin & Kenney and James W. Kenney, St. Paul, for DiIoia.

Timothy W. Waldeck, Minneapolis, for Minnesota Valley Country Club.

KELLEY, Justice.

This is an appeal by Grain Dealers Mutual Insurance Co. (hereinafter Grain Dealers) from a judgment entered against it on June 15, 1981, and from an order of the district court dated June 26, 1981 denying a motion for amended Findings of Fact, Conclusions of Law and Order for Judgment, or in the alternative, a new trial. Grain Dealers brought this declaratory judgment action seeking a declaration of its rights under a policy issued to the defendant James DiIoia. We affirm in part, reverse in part and remand for further proceedings.

In May of 1979, James DiIoia owned a family-operated Pizza Factory franchise located in St. Paul, Minnesota. He was the named insured in a special multi-peril liability insurance policy issued to him by Grain Dealers. The policy provided that liability insurance did not apply to bodily injury arising out of the conduct of a joint venture of which the insured was a member unless such joint venture was designated a named insured in the policy itself. No joint venture was designated as a named insured in the policy. The policy also contained exclusions for bodily injury for which the insured might be held liable as a person or organization engaged in the business of serving alcoholic beverages or as lessor of premises used for the purpose of serving alcoholic beverages.[1]

---

1. The insurance policy contained these exclusions, among others:

(h) To bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of * * * serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

\* \* \* \* \* \*

(ii) by reason of the * * * serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol which causes or contributes to the intoxication of any person.

Pizza Factory, Inc., the franchisor, had a number of Pizza Factory franchises, such as DiIoia's, in the metropolitan area. It held voluntary bi-monthly meetings with the franchisees, but DiIoia had not participated in these meetings for some time prior to May 1979. Officers of Pizza Factory, Inc. held one of the bi-monthly meetings of franchise owners in May of 1979. DiIoia was not invited to the meeting and did not attend. At this meeting, a picnic was planned for employees of all the franchises. All details of the picnic were decided including the place, the time, what food and drink would be served and what activities would be provided. Following the meeting, invitations were sent to all franchisees, including DiIoia. Each franchise employee was advised he or she could bring one guest. DiIoia had no knowledge that any alcoholic beverages were to be served at the picnic. He did not personally attend the picnic, but his daughter-employee was there for a short time.

Patricia Macaulay, a lessee of the Coon Rapids Pizza Factory franchise, not only was present at the May planning meeting but attended the picnic on June 25, 1979 with a friend, Kimberley Cady, who had helped her from time to time in her restaurant business. The two arrived at Prior Lake, where the picnic was held, at approximately 3 p.m. Macaulay had one beer provided by the planners of the party. Macaulay and Cady left the sponsored picnic about 6 p.m., went to the Green Heights Bar on shore, and spent about an hour generally socializing and consuming alcoholic beverages. The two then returned momentarily to the picnic site to pick up their belongings, following which they made a trip to the Burnsville Bowl to pick up Macaulay's boyfriend, Bradley Wetterlin. The three then returned to the Green Heights Bar for the remainder of the evening, where they generally socialized and consumed alcoholic beverages.

As Macaulay was driving Wetterlin and Cady home from the Green Heights Bar in the early morning hours of June 26, she was involved in a head-on collision on Highway 13 with an automobile driven by James Coleman.[2] In the collision, Macaulay was killed. Cady and Wetterlin received personal injuries.

Thereafter, Cady commenced a lawsuit naming as a defendant, along with many others, James DiIoia. In Paragraph XXII of the Amended Complaint, she alleged DiIoia was engaged in a "joint venture or joint enterprise" in planning, operating and conducting the outing on June 25, 1979. After alleging that at the time of the collision Macaulay was acting within the scope of agency for such "joint venture or joint enterprise," Cady alleged that the "joint venture or joint enterprise" illegally sold or bartered intoxicating liquor to Macaulay in violation of Minn.Stat. § 340.95 (1980). Thus, the sole ground for alleging liability on the part of DiIoia was that he was part of a "joint venture or joint enterprise"; that the "joint venture or joint enterprise" illegally furnished intoxicating beverages to Macaulay; and that a negligent Macaulay was acting as agent of the "joint venture or joint enterprise" at the time of the tragic accident.

Upon receiving the complaint, DiIoia tendered the defense of the Cady action to appellant, Grain Dealers. Appellant retained a law firm to defend DiIoia in the Cady action. The company then commenced this declaratory judgment action naming as parties all persons who might have an interest in the "joint venture-joint enterprise" question as well as Kimberley Cady.[3] All parties defaulted except DiIoia and Cady.

The declaratory judgment action complaint alleges that there was no insurance

**2.** For facts surrounding Coleman's activities and his driving leading up to the automobile collision, see *Cady v. Coleman*, 315 N.W.2d 593 (Minn.1982).

**3.** This court has consistently urged that insurer's obligations be determined in separate pro-

ceedings. *Newcomb v. Meiss*, 263 Minn. 315, 322, 116 N.W.2d 593, 598 (1962); *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 391 n.2 (Minn.1979); *Farmers Insurance Exchange v. Sipple*, 255 N.W.2d 373, 374 n.1 (Minn.1977).

coverage for DiIoia which would obligate Grain Dealers to either defend DiIoia in the action commenced by Cady or to pay any damages that might be assessed therein.[4] The declaratory judgment action was tried to the court without a jury. The trial court declined to determine whether, on June 25–26, 1979, DiIoia was engaged in a joint venture. If he was, of course, there would be no coverage. Moreover, the trial court did not determine whether, under any circumstances alleged in the complaint, DiIoia would be subject to liability for allegedly furnishing intoxicating beverages to Macaulay. The trial court did hold that appellant must pay DiIoia's attorneys fees in the declaratory judgment action and in the action commenced against him by Cady.

■ The trial court's explanation for declining to resolve the joint venture question was that it is a question of fact for jury resolution.[5] Ordinarily, of course, that is correct. However, the court overlooked the fact that appellant waived its right to a jury trial. It was then the duty of the trier of fact, here the trial court, to determine whether there was a joint venture—unless the issue to be decided is the same as an issue in the main action, or unless its resolution would not terminate the uncertainty or controversy giving rise to the proceeding. Minn.Stat. § 555.06 (1980).

■ Where the question to be resolved in the declaratory judgment action between an insurer and an insured will be decided in the main action, it is inappropriate to grant a declaratory judgment. *Brohawn v. Transamerica Insurance Company*, 276 Md. 396, 406, 347 A.2d 842, 849 (1975). However, if the issue is not exactly the same in each action, though closely tied together, the parties are entitled to have a declaration establishing coverage or the lack thereof in the declaratory judgment action.[6]

In the case at bar, the question of whether DiIoia was engaged in a joint venture might never be decided in the main action.[7]

4. Although the complaint is not completely clear, it appears appellant alleged that it would not be liable if DiIoia was engaged in a "joint venture" and, further, that it would not be liable if DiIoia, as a participant in a joint enterprise, bartered or sold intoxicating beverages to Macaulay.

5. One of the problems facing the trial court was that Grain Dealers requested the court to find that DiIoia was engaged in neither a "joint venture" nor a "joint enterprise." Had the insurer restricted its claim to a request to determine whether there was a "joint venture," a decision either way would have determined the coverage question. If the trial court found the existence of a joint venture, plaintiff-insurer had neither the duty to defend DiIoia in the main action nor pay damages that might be awarded against him. If there was a finding of no joint venture, the insurance company would have the obligation to defend DiIoia and, if, in the main action, it was determined he was engaged in a joint enterprise and, at the time of the accident, Macaulay was acting within the scope of the joint enterprise, the duty to pay any damages against DiIoia. But by asking the trial court to find neither a joint venture nor a joint enterprise, the insurer was asking the court to resolve a question to be decided in the pending main action. A decision that there was or was not a joint venture would not affect Cady's claim against DiIoia, but a decision there was neither a joint venture nor a joint enterprise would have terminated Cady's claim against DiIoia.

6. *See Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822 (Minn.1980); *Hartford Fire Ins. Co. v. Blakeney*, 340 So.2d 754 (Ala.1976). Thus, where the main action arose out of a shooting, the parties were entitled to a judicial determination in a declaratory judgment action prior to trial of the main action whether the injury was "expected or intended," as those words were used in a policy issued to the insured. *Smith v. North River Insurance Company*, 360 So.2d 313 (Ala.1978). *See also Continental Western Ins. Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976).

7. DiIoia's interest would be to show (1) that he was not engaged in a joint venture (so coverage would not be excluded under the policy), or (2) that he was not engaged in either a joint venture or a joint enterprise (so he would not be liable and his defense costs would be paid). Defense counsel furnished to DiIoia would have the duty to advance those interests. The insurer would be interested in establishing (1) that there was a joint venture and therefore no coverage or duty to defend, or (2) that there was neither a joint venture nor a joint enterprise and therefore no damage liability to an injured plaintiff. However, the insurer would have no right to litigate this issue unless it could join in the main action; thus, the question might never be decided.

We hold, therefore, that the trial court should have determined whether or not DiIoia and the other franchisees were engaged in a joint venture [8] in putting on this picnic outing.[9]

■ The trial court ordered Grain Dealers to pay attorneys fees and expenses for an independent law firm to defend DiIoia in the main action commenced against him and others by Cady. Appellant claims the court erred in so ordering prior to the determination of the coverage question. A liability insurer's duty to defend a policyholder is to be determined by the allegations in the complaint served upon the insured by the third party. *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310 (1976); *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885 (Minn.1978). An insurer seeking to avoid affording a defense carries a burden of demonstrating that all parts of the cause of action fall clearly outside the scope of coverage. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389 (Minn.1979). If the complaint's allegations are partly within the coverage and partly without the insurance coverage, the company usually has the duty to defend. *Christian v. Royal Ins. Co.*, 185 Minn. 180, 240 N.W. 365 (1932).

■ In Cady's action against DiIoia, she alleged that he was engaged in either a joint venture or a joint enterprise. Joint ventures are specifically excluded under the terms of the policy, but joint enterprises are not. Accordingly, there was an allegation of coverage and the insurer therefore has the duty to defend—at least until such time as the court determines that there was a joint venture, which, of course, would relieve the insurer from proceeding to afford DiIoia with further defense. Moreover, since there is a conflict of interest for Grain Dealers, it has the obligation of reimbursing DiIoia for reasonable attorneys fees incurred by him in defending the Cady lawsuit. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389 (Minn.1979).

■ The trial court ordered Grain Dealers to pay DiIoia's "costs and disbursements" in defending this declaratory judgment action. There appears some question in the record whether the trial court meant that DiIoia's attorneys fees were to be paid by appellant.[10] Inasmuch as this case is being remanded for a determination on

**8.** In *Delgado v. Lohmar*, 289 N.W.2d 479, 482 n.2 (Minn.1979), we set forth the four requirements needed to be proved in order to establish a joint venture.

**9.** It is not clear from the record what emphasis may have been placed by the appellant on the issue of non-liability for furnishing or serving intoxicating beverages to Macaulay. In fairness to both counsel and the trial court, it should be noted that our opinion in *Cady v. Coleman*, 315 N.W.2d 593 (Minn.1982) was not released until February 12, 1982. On reconsideration, the trial court might well hold that as a matter of law there was no sale or barter of intoxicating beverages to Macaulay either by a joint enterprise or a joint venture. In such case, appellant would prevail in this declaratory judgment action, and it would not be necessary to determine the joint venture issue.

**10.** Costs and disbursements do not include attorneys fees in the absence of contract or a statute permitting the same. *McRostie v. Owatonna*, 152 Minn. 63, 68, 188 N.W. 52, 54 (1922); Minn.Stat. § 549.02 (1980); Minn.Stat. § 549.04 (1980). The trial judge attached a memorandum "deemed to be part of the FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER HEREIN." In the last paragraph of that memorandum, the trial court states: "On the question of attorney's fees, it is clear that Grain Dealers must bear the litigation costs of bringing an unsuccessful declaratory judgment to deny coverage." Briefs of both the appellant and the respondent DiIoia assume that the trial court ordered Grain Dealers to pay the attorneys fees DiIoia incurred in the declaratory judgment action. Apparently the trial judge relied upon the case of *Security Mutual Casualty Company v. Luthi*, 303 Minn. 161, 226 N.W.2d 878 (1975). That case, however, held that the insurance policy involved contained language which allowed an insured attorneys fees within the policy language of "expenses incurred at the company's request." Before attorneys fees are allowed in this declaratory judgment, the trial court should make a finding whether any language in DiIoia's policy would permit that result.

whether or not there was a joint venture, such an order for "costs and disbursements" is premature.

Affirmed in part, reversed in part and remanded for a determination of whether DiIoia was engaged in a joint venture.