**STATE of Minnesota, Respondent,**

v.

**Glen BJORNSON, Appellant.**

**No. C5-85-188.**

Court of Appeals of Minnesota.

Nov. 19, 1985.

Review Denied Jan. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Sarah Currie Mardell, Apple Valley, for respondent.

Emmett D. Dowdal, White Bear Lake, for appellant.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Glen Bjornson, appeals from a misdemeanor conviction for a zoning ordinance violation, contending that errors committed by the trial court deprived him of a fair trial. He claims that (1) the trial court coerced the jury verdict; (2) the trial court erred in several of its evidentiary rulings; (3) the ordinance is unconstitutionally vague; (4) the trial court erred by not instructing the jury on intent and (5) the trial court erred in including attorney's fees in the costs of prosecution assessed against him. We affirm as modified.

## FACTS

Bjornson was convicted under Hugo City Code § 320-4, subd. F, which requires an owner of property zoned "Rural Residential II" (RR2) to secure a special use permit before keeping cattle on the property. Bjornson testified that since 1977, he had kept from four to nine head of cattle on his property as a hobby from which he earned some income. The charge arose after Bjornson's neighbors complained about the cattle to the Hugo City Council.

The criminal complaint filed on June 21, 1984, was the result of a long history of communication between Bjornson and the City of Hugo. The City Attorney for Hugo, in a letter dated April 27, 1984, informed Bjornson that he may be violating a zoning ordinance for keeping cattle and that he needed to apply for a special use permit. At a Hugo City Council meeting on May 21, 1984, Bjornson was once again informed that he needed a special use permit. He was also given notice of but did not attend a Hugo Planning Commission public hearing to discuss the presence of cattle on his land. Finally, on June 6, 1984, the deputy clerk for Hugo mailed Bjornson a letter and telephoned him to remind him that he needed a special permit.

At trial, a Washington County deputy sheriff and two of Bjornson's neighbors testified that, on June 21, 1984, they saw cattle and a shelter for the cattle on Bjornson's property. Photographs showing the cattle and shelter were also admitted into evidence.

Both Bjornson and his wife testified that there were cattle on the land on June 21, 1984. Bjornson also testified that he knew he needed a special use permit, he had not applied for one and he intended to allow the cattle to remain on his property.

The jury found Bjornson guilty of violating the Hugo zoning ordinance. He was sentenced to ninety days and a fine of $700 plus a 10% surcharge. The ninety days and $200 of the fine were stayed on the condition that Bjornson remove the cattle and pay the costs of prosecution. The costs of prosecution totalled $2,147.88. Attorney's fees accounted for $1,754 of this sum.

## ISSUES

1. Is appellant's delay in filing his brief grounds for dismissal?

2. Is Hugo City Code § 320-4, subd. F unconstitutionally vague?

3. Did the trial court commit prejudicial error in its evidentiary rulings?

4. Did the trial court commit prejudicial error when it refused to instruct the jury on intent?

5. Did the trial court commit prejudicial error in its additional instructions and comments to the jury?

6. Did the trial court err in including attorney's fees as a cost of prosecution?

## ANALYSIS

### I.

### Timeliness of brief

■ The State argues that Bjornson was late filing his brief and therefore the appeal should be dismissed. Filing a brief late does not affect the jurisdiction of this court. Before this appeal will be dismissed for noncompliance with a technical, nonjurisdictional matter, the four factors set forth in *Boom v. Boom,* 361 N.W.2d 34 (Minn.1985), must be applied to the facts. *Progressive Casualty Insurance Co. v. Kraayenbrink,* 365 N.W.2d 229, 231 (Minn. 1985). Those factors are:

1. Has the movant been prejudiced by the appellant's failure to comply with the rules?

2. Has the appellant demonstrated justifiable cause for the failure to comply with the rules?

3. Has the defect been cured and have the record and all briefs been filed so that the merits can be evaluated?

4. Is the underlying appeal meritorious?

*Boom,* 361 N.W.2d at 36.

■ In a letter dated March 29, 1985, the attorney for Bjornson notified the clerk of appellate courts that, due to a delayed certificate of delivery, he assumed appellant's brief would be due May 29, 1985. This assumption was never contradicted. The State received a copy of this letter and made no objection at that time. The State followed the extended timetable when filing its own brief and did not object to the delay until it raised the issue in its brief. The State has not shown it was prejudiced by this delay of approximately thirty days. The briefs have been filed and this court has considered the merits. Under these circumstances, dismissal is an inappropriate sanction.

### II.

### Constitutionality of ordinance

Hugo City Code § 320–4, subd. F provides:

*RURAL RESIDENTIAL 2 (RR2).* Within the Rural Residential 2 District, unless otherwise provided in this Ordinance, no building or land shall hereafter be erected or structurally altered except for one or more of the following uses:

\* \* \* \* \* \*

*Special Uses.* Within the Rural Residential 2 District, no land or structure shall be used for the following, except by Special Use Permit, in accordance with this Ordinance \* \* \*. Provided the criteria for Special Use Permits are met, the keeping of non-domestic animals, other than hogs or goats, shall be permitted special uses on lots of 5 acres or more, within the following limitations: one horse, cow or sheep permitted on 5 acres and one additional animal for each acre over five; poultry flocks not exceeding 100 birds on five acres and 50 additional birds for each acre over five \* \* \*.

Hugo, Minn., Code § 320–4, subd. F (1981). Bjornson challenges this ordinance as unconstitutionally vague.

■ The ordinance in question does not on its face encompass any constitutionally protected conduct; therefore, the constitutionality of the ordinance is judged "in light of the conduct that is charged to be violative of the [ordinance]." *City of Mankato v. Fetchenhier,* 363 N.W.2d 76, 78 (Minn.Ct.App.1985) (quoting *Kolender v. Lawson,* 461 U.S. 352, 369, 103 S.Ct. 1855, 1865, 75 L.Ed.2d 903 (1983)). The test to be applied to this conduct is that:

A criminal statute must be definite enough to give notice of the conduct required to anyone who desires to avoid its penalties; it must be sufficiently definite to guide the judge in its application and the attorney in defending a person charged with its violation. No more than a reasonable certainty can be demanded.

*State v. Larson Transfer & Storage, Inc.,* 310 Minn. 295, 298, 246 N.W.2d 176, 179 (1976) (quoting *State v. McCorvey,* 262 Minn. 361, 365, 114 N.W.2d 703, 706 (1962)).

Bjornson argues that the ordinance fails this test in two respects. First, he argues that the definition of "non-domestic animals" used in the ordinance does not comport with common usage of the term "domestic animals." Hugo City Code § 320–3, subd. B(7) specifically defines "non-domestic animals" as "[c]attle, hogs, horses, bees, sheep, goats, poultry and other commonly known farm animals." Bjornson does not claim that the cows on his property are not "cattle" within this definition. The term "non-domestic animals" was sufficiently defined to give him notice of what animals he was permitted to keep on his property even if the definition did not comport with common usage.

Second, Bjornson argues that the ordinance is vague because the initial language of section 320–4, subd. F states that "no building or land shall hereafter be erected or structurally altered" while subd. F(3) states that "no land or structure shall be used." Bjornson claims this disparity makes the ordinance vague because the two clauses prohibit different conduct.

Section 320–3, subd. A directs that "[i]n the event of conflicting provisions, the more restrictive provision shall apply." This rule of construction provides a reasonably precise manner for resolving any disparity in language between the subdivisions. Also, the overall purpose of section 320–4, subd. F is to enumerate the permitted uses of land zoned "RR2." The ordinance specifically states special use permits are needed for keeping non-domestic animals. Despite the different language in the two clauses, the ordinance was definite enough to give Bjornson notice that he could not keep cattle on his land without a special use permit.

Further, as Bjornson's testimony showed, before any charges were filed, he had actual notice of the ordinance and its provisions as well as actual notice of how he was violating the ordinance and how he could comply. Bjornson could have no reasonable doubt that his conduct came within the ordinance. *See Larson Transfer & Storage; Fetchenhier*, 363 N.W.2d at 79.

The ordinance is not unconstitutionally vague.

### III.

### Evidentiary rulings

Bjornson claims that the trial court erred in several of its evidentiary rulings and that the cumulative effect of these errors was prejudicial.

A. Bjornson contends that the trial court erred in admitting photos of his property with the cows on it because the photos were not taken on June 21, 1984, the date specified in the complaint. The pictures were taken in the summer of 1983 and in November of 1984.

The admission of photographs is in the discretion of the trial judge and the ruling will not be reversed absent an abuse of discretion. *State v. Daniels*, 361 N.W.2d 819, 828 (Minn.1985). Photos are generally admissible if they accurately portray the scene and are relevant to a material issue. *State v. Durfee*, 322 N.W.2d 778, 785 (Minn.1982). Both witness/photographers testified that they saw the property on June 21, 1984, and that the pictures accurately represented what they saw on that date. There were no changes in the landscape, the structures on the land or the general condition of the land between the time the pictures were taken and June 21, 1984. The pictures showed cows on Bjornson's property which was one of the material issues at trial. The trial court did not abuse its discretion by admitting the photographs.

B. Bjornson claims the trial court also erred in admitting *Spreigl* evidence without proper notice. The State elicited testimony from several witnesses about a structure on Bjornson's property which he used to store feed and shelter cattle. Bjornson characterizes this testimony as evidence of other crimes because section 320–4, subd. F provides that "no building * * * shall hereafter be erected."

The State offered the evidence about the structure to show that there

were cows on the property, not to prove other crimes. When evidence of other crimes is "necessarily, but incidentally, a part of the substantive proof of the offense," a *Spreigl* notice is not required. *State v. Martin*, 293 Minn. 116, 129, 197 N.W.2d 219, 227 (1972). Further, Bjornson himself testified on cross-examination with no objection from defense counsel that the structure was on his property and he used it to store hay and sometimes he used it as a shelter for the cattle. Under these facts, the trial court did not err by admitting evidence of the structure.

■■■■ C. Bjornson sought to admit the expert testimony of an attorney who would have testified that the ordinance is more properly classified as a building ordinance rather than a use ordinance. Expert testimony is admissible if it is helpful and will not mislead or confuse the jury. *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn. 1980). The trial court has broad discretion to determine if these criteria have been met. *Id.* It did not abuse that discretion. In this case, the actual construction and placement of the ordinance in the Hugo City Code was not an issue before the jury.

■■■■ D. Bjornson claims the trial court erred in restricting his cross-examination of a witness. Defense counsel did not, however, make an offer of proof. Thus, under Minn.R.Evid. 103(a)(2), Bjornson is precluded from claiming error now. *State v. Fratzke*, 354 N.W.2d 402, 408 (Minn.1984).

E. Bjornson contends that several of the court's other rulings were erroneous. We have reviewed these rulings and find no error. None of the trial court's evidentiary rulings singly or cumulatively constituted prejudicial error.

## IV.

### Jury instruction on intent

The trial court denied Bjornson's request to instruct the jury on intent. Bjornson contends that this refusal constituted prejudicial error. The ordinance does not refer in any way to intent but makes it a viola-

tion to keep non-domestic animals without a special use permit.

■■■■ The principle is well-established that:

the legislature may forbid the doing of an act and make its commission criminal without regard to the intention, knowledge or motive of the doer.

*State v. Suter*, 346 N.W.2d 372, 374 (Minn. Ct.App.1984), *pet. for rev. denied*, (Minn. July 24, 1984) (quoting *State v. Kremer*, 262 Minn. 190, 191, 114 N.W.2d 88, 89 (1962)). The element of intent is often not included in ordinances such as the one considered here. In these instances, the wrongdoer must only have intended to do the act that constitutes the crime, he need not have intended to commit the crime. *State v. Kremer*, 262 Minn. 190, 191, 114 N.W.2d 88, 89 (1962). Bjornson testified that he intended to keep cows on his property. Under these facts, no intent instruction was required.

## V.

### Trial court's comments to the jury

While the jury was deliberating it requested that the trial court reread the ordinance under which Bjornson was charged. Without notifying either counsel, the trial judge reread the ordinance to the jury. The following interchange then occurred:

A Juror: So that makes seven on eleven?

A Juror: Seven cows on eleven acres. The Court: He has to have a special permit. I don't know what you're coming up with here.

Bjornson claims that this interchange coerced the jury to return a verdict of guilty.

■■■■ A trial court may give additional instructions to a jury after it has begun deliberations if it requests. Minn.R. Crim.P. 26.03, subd. 19(3). In these instructions as in all other interchanges with the jury, the trial court should maintain a completely neutral stance and not apply any improper pressure on the jury. *Schultz v. State*, 290 N.W.2d 778, 780 (Minn.1980).

In this case, the trial court went beyond giving the requested instruction. The trial court's comments to the jury put particular emphasis on the special permit element of the charge and indicated to the jury that Bjornson needed and did not have a special permit. We conclude that the trial court erred in its comments to the jury. However, Bjornson testified on cross-examination that he knew he needed a special use permit and he did not have one. This admission and the overwhelming evidence that Bjornson violated the ordinance render the trial court's error harmless.

We also note that the trial court did not notify either counsel before giving the jury the additional instructions. Minn. R.Crim.P. 26.03, subd. 19(3) requires that notice be given to the prosecutor and defense counsel before additional instructions are given. The lack of notice was not objected to in the trial court and the issue has not been raised on appeal. However, the better practice would certainly be for the trial court to notify both counsel before proceeding with additional instructions. *State v. Kindem,* 338 N.W.2d 9, 17 (Minn. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984).

## VI.

### Costs of prosecution

A portion of Bjornson's sentence was stayed on the condition that he pay the costs of prosecution. The trial court determined these costs to be $2,147.88. The attorney's fees for the prosecution accounted for $1,754 of this amount.

Minn.Stat. § 631.48 (1984) provides that:

In all criminal actions, upon conviction of defendant, in addition to the punishment prescribed and as a part of the sentence, the court may adjudge that defendant *shall pay the whole or any part of the disbursements of the prosecution,* and payment thereof may be enforced in the same manner as the sentence, or by execution against property.

Minn.Stat. § 631.48 (1984) (emphasis added). Also, Hugo City Code § 320–13 provides that anyone found guilty of violating an ordinance shall be subject to a fine and/or imprisonment plus the costs of prosecution. The trial court interpreted these provisions to include attorney's fees.

In construing an earlier statute almost identical to Section 631.48, the court in *State v. Morehart,* 149 Minn. 432, 183 N.W. 960 (1921), stated:

[T]he payment of the state's disbursements is not part of the penalty, but something in addition thereto. The evident purpose of the statute is not the punishment of the offender but the reimbursement of the state. It should be held, however, to refer to such items of disbursements as are properly taxable against a defeated party and not to include those items of expenses connected with the trial which cannot be taxed as disbursements.

\*  \*  \*  \*  \*  \*

The disbursements so taxed should include only items of the same character as might be taxed in a civil action \* \* \*.

149 Minn. at 433–35, 183 N.W. at 960–61. Statutes providing that the prevailing party in a civil action recover "costs" or "disbursements" have not been construed to include attorney's fees. *Grain Dealers Mutual Insurance Co. v. Cady,* 318 N.W.2d 247, 251 n. 10 (Minn.1982). Where, as in this case, there is no statute or contract that specifically includes attorney's fees as a "cost", they are excluded.

Further, defendants could certainly be discouraged from exercising their right to a trial if they were faced with the possibility of being assessed the State's attorney's fees if found guilty. Such a result would be egregious and impermissible.

The State cites *City of Hugo v. Brevig,* (Minn.Ct.App. Apr. 27, 1984) (order denying discretionary review), as authority for imposing attorney's fees on Bjornson. The State argues that this court's denial of discretionary review in that case, where the facts were similar and attorney's fees were imposed, is authority for imposition of at-

torney's fees in this case. A summary denial of a petition for discretionary review is not dispositive of any of the issues raised in the petition. *See Carlson v. Carlson,* 371 N.W.2d 591, 594 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Oct. 11, 1985). An order denying discretionary review means that the court will not consider the merits. Therefore, such an order cannot be relied on in future cases.

The trial court erred in including attorney's fees in the costs of prosecution.

### DECISION

Appellant's delay in filing his brief is not grounds for dismissal. The ordinance under which appellant was charged is not unconstitutionally vague. The trial court did not err in its evidentiary rulings nor in its jury instructions. The trial court's error in its comments to the jury during deliberations was harmless. The costs of prosecution, under Minn.Stat. § 631.48 and Hugo City Code § 320–13, do not include attorney's fees. The costs of prosecution must be reduced to $393.88.

Affirmed as modified and remanded for entry of costs of prosecution in the sum of $393.88.