Douglas Dean CLEMENS, Respondent,

v.

Troy WILCOX, et al., Respondents,

State Farm Fire and Casualty
Company, Petitioner,
Appellant.

No. C6–85–636.

Supreme Court of Minnesota.

Aug. 15, 1986.

Rehearing Denied Sept. 23, 1986.

R.D. Blanchard, Gayle C. Hendley-Zappia, Minneapolis, for appellant.

David G. Moeller, Minneapolis, for respondent Troy Wilcox.

Tanya M. Bradford, Minneapolis, for respondent Douglas Clemens.

KELLEY, Justice.

Appellant State Farm Fire and Casualty Company (State Farm) issued a homeowner's liability insurance policy to Douglas Clemens. The policy excluded from coverage "bodily injury * * * expected or intended by the insured." Clemens was sued by Cheryl Wilcox who claimed that Clemens "attempted to inflict bodily injury * * * and plaintiff was put in fear of an immediate and harmful bodily contact." Clemens tendered the defense of that action to State Farm which, after an investigation, declined to afford a defense or to indemnify Clemens. He then commenced a declaratory judgment action against State Farm. In that action, State Farm contended Clemens had no coverage because of the exclusion in the policy, and, therefore, the company had no duty to either defend or indemnify him in the Wilcox suit. The declaratory judgment action was tried before the suit of Wilcox against Clemens. The trial court refused to submit to the jury the issue of whether Cheryl Wilcox had sustained a "bodily injury." After a verdict finding that Clemens did not expect or intend to cause bodily injury to Cheryl Wilcox, the trial court held the exclusion in

State Farm's policy inapplicable. The court of appeals affirmed the trial court's ruling on Cheryl Wilcox's claim.[1] We reverse.

On March 19, 1982, the wife of Douglas Clemens asked him to pick up their two children and two children of the neighboring Meyer family at a Bloomington grade school. Also, Clemens was to pick up Bobbie Meyer, 13, at a bus stop a block and a half from his home. Bobbie Meyer, an eighth grader at Oak Grove Junior High School, had told his parents that another eighth grade boy, Troy Wilcox, wanted to fight with him. Bobbie's parents had instructed him not to fight because he had braces on his teeth. They made arrangements for someone to pick Bobbie up at his bus stop. On this day Clemens was to do so.

As Clemens drove down Chicago Avenue towards the bus stop, he saw Bobbie walking rapidly towards the car. Behind Bobbie was another boy, Troy Wilcox, who was pushing and shoving Bobbie. After stopping the car, Clemens approached the two boys. Bobbie immediately entered the Clemens' car and shut the door. Clemens grabbed Troy Wilcox and, holding him by his jacket, maneuvered the boy to the side of the car. Then Clemens grabbed Troy by the hair and banged his head against the car while shouting, "Do you like to fight?"

Although Clemens denies it, Troy claims Clemens next struck him with a fist causing a bruise on his cheek. While still holding Troy's jacket, Clemens next knocked the boy's legs from underneath him causing him to fall to the ground. Troy did not fight back. When Troy tried to raise his head, Clemens slammed the boy's head against the pavement several times, asking him, "Do you like it?"

After Clemens re-entered his car, Bobbie opined that he "would really get it." Clemens drove around the corner, spotting Troy with some other boys. Clemens

rolled down the window and shouted, "If you do it again, I'll come after you again." Allegedly, Troy's response was that he would sue because he was a minor and Clemens, an adult, could not legally touch him.

Approximately 45 minutes later, Ms. Cheryl Wilcox, Troy's mother, came to Clemens' house. She asked Clemens if he was the gentlemen who beat up her son. Clemens did not deny this and invited her into his living room. She asked for his name and telephone number. He gave her a piece of paper and a telephone directory on which to write. Before long the two began to argue and yell at each other. Clemens admits that during this time he swore at her and used foul language. Ms. Wilcox became upset, threw the telephone book and paper across the living room, stomped out of the house and slammed the door behind her.

Subsequently, Ms. Wilcox and her son sued Clemens. The first three counts of the five-count amended complaint are claims by Troy Wilcox. Troy sued for assault and battery, infliction of emotional distress and negligent conduct. His claimed injuries consisted of a bruise on his face and a cut on the back of his head. He was not treated by a physician for his injuries. The final two counts of the complaint, on behalf of Cheryl Wilcox, allege negligence and assault. The complaint does not allege any physical contact between Clemens and Ms. Wilcox. Instead it states, "Defendant, with his abusive language and threatening gestures, attempted to inflict bodily injury upon plaintiff with unlawful force and Plaintiff was put in fear of an immediate and harmful bodily contact."

Clemens tendered the defense of the Wilcox claims to State Farm. Based upon its investigation of the events, State Farm re-

---

1. Both Cheryl Wilcox and her son, Troy Wilcox, brought claims against Clemens. The trial court entered judgment in favor of Clemens in ruling that State Farm had the obligation to defend and indemnify against both claims. The court of appeals overruled the trial court's deter- mination that Clemens did not expect or intend to cause bodily injury to Troy Wilcox. The court of appeals held as a matter of law the exclusion applied to his claims against Clemens. *Clemens v. State Farm Fire and Casualty Co.,* 378 N.W.2d 68 (Minn.App.1985).

jected the tender, whereupon Clemens instituted this declaratory judgment action. The insurer's defense is two pronged: first, it asserts that its homeowner's policy does not cover claims arising from the intentional torts of assault and battery, and second, that its policy does not apply to claims which do not include some physical injury.[2]

No witness at the trial of this declaratory judgment action testified that Cheryl Wilcox sustained any bodily injury. Although she was present at all times in the courtroom, during the trial, she was not called to testify. There was no medical or other evidence to substantiate any claim of bodily injury. State Farm presented evidence, unrebutted, that she did not sustain any bodily injury. Neither the attorney for the Wilcoxes nor the attorney for Clemens presented any evidence to the contrary. Thereupon, State Farm moved for a directed verdict, contending the evidence conclusively established that the minimal bodily injury sustained by Troy Wilcox was expected or intended by Clemens at the time of the assault, and there was no evidence to establish bodily injury to Cheryl Wilcox. Counsel for the Wilcoxes argued the only proper factual issue for resolution in this declaratory judgment action was whether Clemens expected or intended an injury to either Wilcox. The trial court agreed. In other words, the trial court did not allow jury resolution of the question of whether or not Ms. Wilcox had sustained "bodily injury." On the special verdict form, the jury was instructed to assume Cheryl Wilcox sustained bodily injury.[3]

The jury found Clemens did not expect to cause bodily injury to Cheryl Wilcox. The trial court adopted that jury finding. Subsequently, it denied State Farm's motions for judgment notwithstanding the verdict, for amended findings, conclusions of law and order for judgment or, in the alternative, for a new trial.

The court of appeals affirmed the trial court's finding of no intent to injure Cheryl Wilcox. It likewise affirmed the trial court's ruling not to submit to the jury the issue of whether Cheryl Wilcox sustained bodily injury.

In the court of appeals and here respondents contend the question of bodily injury is inappropriate in a declaratory judgment action because the issue will be decided in the main action. On the other hand, appellant contends the purpose of the declaratory judgment procedure, in cases of this kind, is to resolve insurance coverage questions before the trial of the main action.

We commence our analysis with reiteration of our long-standing policy of encouraging resolution of insurance coverage disputes in separate declaratory judgment actions. *See, e.g., St. Paul School District v. Columbia Transit*, 321 N.W.2d 41, 47 (Minn.1982); *Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247, 249 n. 3 (Minn.1982); *Miller v. Shugart*, 316 N.W.2d 729, 733 (Minn.1982); *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389,

---

**2.** Relevant provisions of the policy bearing upon these assertions provide:

DEFINITIONS

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

\* \* \* \* \* \*

COVERAGE L–PERSONAL LIABILITY

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

a. Pay up to our limit of liability for the damages for which the insured is legally liable; and

b. Provide a defense at our expense by counsel of our choice.

\* \* \* \* \* \*

EXCLUSIONS

1. Coverage L—Personal Liability and Coverage M—Medical Payments to Others do not apply to:

a. Bodily injury or property damage which is expected or intended by the insured.

**3.** The relevant special verdict interrogatory was:

2. Assuming that "bodily injury" was sustained by Cheryl Wilcox, did Douglas Clemens expect or intend to cause "bodily injury" to Cheryl Wilcox?

A similar question on intent was asked concerning Troy Wilcox's claim. However, as indicated in footnote 1, that issue is not before this court now.

391 n. 2 (Minn.1979); *Iowa Kemper Insurance Co. v. Stone,* 269 N.W.2d 885, 888 n. 5 (1978).

While on occasion we have recognized that not all insurance issues are proper for resolution in a declaratory judgment action, we have likewise held that where the issue is not precisely the same as in the main action, its resolution in a declaratory judgment action is appropriate. *Grain Dealers Mutual Insurance Co. v. Cady,* 318 N.W.2d 247, 250 (Minn.1982).[4]

Our examination of the contentions of the parties and the facts in this case leads us to conclude the "bodily injury" question is not exactly the same as it might be in the main action. Therefore it is appropriate for resolution in this declaratory judgment action. Here, issues for resolution would be, first, the meaning of "bodily injury" in the policy and, second, whether Ms. Wilcox suffered *any* injury within the scope of that meaning. To the contrary, the main action in which Ms. Wilcox is plaintiff will address the nature and extent of any common law personal injuries including claims that may be outside the scope of the "bodily injury" language as used in the policy.

State Farm asserts that "personal injury" as used in tort law is broader in scope than the term "bodily injury" as used in liability insurance policies and case law interpreting those policies. In insurance law, "bodily injury" means physical injury and does not include nonphysical harm such as mental suffering and emotional distress. *See, e.g., Rolette County v. Western Casualty & Surety Co.,* 452 F.Supp. 125, 130 (D.N.D.1978) (use of term "bodily injury"

in policy limits harm covered to physical harm); *Bituminous Fire & Marine Insurance Co. v. Izzy Rosen's Inc.,* 493 F.2d 257, 260–61 (6th Cir.1974) ("bodily injury" in liability policy contemplates injury of a physical nature; policy did not cover for false arrest, false imprisonment or malicious prosecution.) *See also* T.A. Appleman, 7A Insurance Law & Practice, § 4501.14 (1979).

In the complaint, Cheryl Wilcox makes no allegation of having sustained physical injuries. Instead, she charges Clemens *"attempted* to inflict bodily injury" and put her *"in fear of* an immediate harmful bodily contact." Assuming such charges could be proven in the main action, legally they amount to nothing more than an assault. Assault is a mental rather than a physical invasion. As one leading authority has explained, damages recoverable for an assault are those for the claimant's mental disturbance arising from fright, humiliation and the like, including physical illness which may result from them. *See* D. Dobbs, R. Keeton and D. Owen, Prosser and Keeton on Torts, § 10 (5th ed.1984). Thus, assuming State Farm prevails in its interpretation of "bodily injury," a determination that Ms. Wilcox suffered no such bodily injury would not necessarily preclude her from establishing personal injuries, such as *mental disturbance,* at the main trial on the merits.

The record here is incomplete as to whether Ms. Wilcox sustained any "bodily injury."[5] Because we conclude resolution of that issue was appropriate in this declar-

---

**4.** In *Cady,* the insured Di Ioias was not covered under his liability insurance policy if he was a member of an undisclosed joint venture. The trial court in a declaratory judgment action refused to determine whether at the time the claim arose Di Ioias was or was not a member of a joint venture. Even though there was a possibility the joint venture issue might be resolved in the main action, it also might not have been. Therefore, we reversed the trial court's determination and sent it back for trial as part of the declaratory judgment action. *Id.* 251.

**5.** As the record now stands, it is devoid of any evidence of physical injury to Ms. Wilcox.

However, at oral argument before this court, for the first time counsel suggested that in fleeing from Clemens, Ms. Wilcox had tripped, sustaining injury. Normally, we would not consider an allegation made in this manner. However, at trial, the judge denied counsel's offer of proof that Ms. Wilcox had sustained some bodily injury. Although ordinarily we would not consider this late allegation, in fairness, had counsel been permitted to make the offer of proof, he might have been able to allege "facts" that would establish the existence of some bodily injury.

atory judgment action, and because the record is incomplete, we deem it necessary to remand to the trial court for a factual determination on this issue.

In this connection, we reject the argument of the counsel for Wilcox that resolution of that issue here would place an "unfair" burden on him because it would require expert medical testimony as to the nature and extent of his client's alleged injuries. Not so; all that he has to establish is that she sustained *some* bodily injury. If she did, the exclusion is inapplicable. No extensive medical testimony is necessary to the resolution of this narrow question, nor is it necessary to produce any evidence on the monetary value of the alleged injuries.

Respondent Clemens contends that litigating the existence or lack of "bodily injury" in the declaratory judgment action creates a conflict of interest between the parties. He asserts that he would be placed in the "intolerable" position of conceding "bodily injury" that Ms. Wilcox had sustained in order to prevail on his claim for insurance coverage, only to face a collateral estoppel argument when attempting to defeat her claim of damages for personal injuries in the main trial. This argument is untenable. In any court proceeding, Clemens, under oath, must tell the truth. He has no license to lie, to alter or to shade his testimony depending upon which role he assumes in the court litigation. Moreover, our court rules and rules governing lawyers professional conduct prohibit Clemens' attorney from assisting him in acts amounting to fraud upon the courts. Minn.R.Civ.P. 11, Minn.R.Prof.Cond. 3.1, 3.3(a)(1), 3.3(a)(2), 3.3(a)(4), 3.4(b).

Counsel for Clemens in briefs filed in both the court of appeals and this court argues that State Farm breached its insurance contract in declining to defend Clemens against the Wilcox claims. Of course, if it is ultimately established that under the facts and circumstances of this case State Farm must provide coverage under its policy, it follows that the company would have the duty to defend Clemens in the Wilcox claim. However, to date, no court has passed upon the question whether State Farm has the duty to pay Clemens legal expenses in presenting this declaratory judgment case. On remand, should the trial court find there was "bodily injury" to Ms. Wilcox, of course, State Farm would have the obligation to defend and, if ultimately necessary, to indemnify Clemens for any damages assessed against him. However, even in the absence of such a finding there possibly might exist a duty on the part of State Farm to provide defense costs not only for defense against Ms. Wilcox's claims, but also Clemens' costs in prosecuting this declaratory judgment action. That issue, however, is not before this court. Respondent Clemens did not properly raise it before the court of appeals nor before this court. *See* Minn.R.Civ. App.P. 106, 128.02. Accordingly, we do not address it. On remand, should the issue be raised before the trial court, it should address its resolution in the light of *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982).

Reversed and remanded.

SIMONETT, J., and AMDAHL, C.J., dissent in part, concur in part.

COYNE, J., took no part in the consideration or decision of this case.

SIMONETT, Justice (concurring in part and dissenting in part).

I agree with the majority and with reversal, except I see no need to try this case again.

At trial the insurer put at issue whether the claimant had sustained bodily injury, a necessary prerequisite to coverage. In evidence as an admission against interest was the Wilcox personal injury complaint which showed that Cheryl Wilcox was not claiming any bodily injury. Clemens and Wilcox made no effort to rebut this proof. Wilcox's counsel did tell the court, "by way of offer of proof, I have reason to believe that Mrs. Wilcox will testify that she did sustain bodily injury in the course of that event." But this bland conclusionary assertion does not qualify as an offer of proof. Minn.R.

Evid. 103(a) (the substance of the excluded testimony must be offered); Minn.R.Civ.P. 43.03 (offer must be specific). Plaintiffs, instead, took the position the bodily injury issue was immaterial and they successfully obtained a ruling from the trial court to that effect.

It was incumbent on plaintiffs to show a bodily injury, at least to the court outside the hearing of the jury if they did not want the jury to know about the injury. *Compare Radmacher v. Cardinal*, 264 Minn. 72, 78, 117 N.W.2d 738, 742 (1962). Plaintiffs failed to do so and they cannot blame their failure on the trial court, which only did what plaintiffs asked it to do.

Not until oral argument in this court was it suggested, almost as an afterthought, that Cheryl Wilcox had tripped after her altercation with Clemens and after she was outside the Clemens' house. This incident, if it occurred, may or may not have been attributable to Clemens' conduct and may or may not have resulted in bodily injury. In any event, the fact remains: (1) this was not newly discovered evidence; (2) it was evidence that should have been presented to the trial court even under plaintiff's erroneous theory of the case; (3) it is evidence plaintiffs chose to keep from the court and jury notwithstanding there was evidence in the trial record of no bodily injury; and (4) it is evidence which is frustratingly vague and highly vulnerable to impeachment.

There are times when fairness requires parties to be bound by their theory of the case and the record they elect to make, and this is such an instance. I would hold as a matter of law, on this record, there is no coverage for Cheryl Wilcox's claim. Although not requested by Clemens, I have no objection to a remand to consider whether the insurer should pay Clemens' attorney fees in this declaratory judgment action.

AMDAHL, Chief Justice (concurring in part and dissenting in part).

I join in the concurrence in part and dissent in part of Justice Simonett.