## STATE v. WILLARD O'HERON AND C. J. O'HERON.

83 N. W. (2d) 785.

June 14, 1957—Nos. 37,128, 37,129.

*Walter R. Nelson,* for appellants.

*Miles Lord,* Attorney General, and *Melvin J. Peterson,* Assistant Attorney General, for respondent.

MATSON, JUSTICE.

Appeal from an order, in each of two cases consolidated for trial, denying defendants' motion to set aside a judgment of conviction for unlawfully taking migratory waterfowl and grant a new trial.

At the time of the alleged game law violations on October 11, 1953, both defendants occupied a duckblind on Grass Lake in Hennepin County. Complaints against the defendants were issued on October 23, 1953. One complaint charged defendant C. J. O'Heron with the offense of unlawfully *hunting,* and the other complaint charged defendant Willard O'Heron with the offense of unlawfully *taking,* migratory waterfowl *in open water* when not *partially concealed* within a *natural* growth of weeds, rushes, flags, or other vegetation.

On the day of the alleged violations the defendants were observed in their blind by two state game wardens who were standing upon the shore of Grass Lake. When the defendants left their blind and returned to shore they were met by the game wardens who informed them that they had violated the law. No written notice was given to the defendants at the time of the violations, but the complaints mentioned above were issued later in the month. After being convicted before a justice of the peace, defendants appealed to the district court which, after a trial de novo, found them guilty and imposed a $50 fine which was immediately suspended. Defendants appeal to this court from orders denying their motion for a new trial.

The unlawfulness of the alleged acts of *hunting* or *taking* of waterfowl in *open water* without being *partially concealed* by *natural* vegetation is based on the provisions of M. S. A. 100.29, subd. 17, which reads:

"It shall be unlawful to take migratory waterfowl and rails in *open water* when the hunter is not within a *natural* growth of weeds, rushes, flags or other vegetation sufficient to *partially conceal* the hunter or boat, or from a permanent artificial blind or sink box built in public waters, provided pursuing or shooting wounded birds in open water in a boat or canoe is permitted." (Italics supplied.)

The above section is to be interpreted according to the definition con-

tained in § 97.40, subd. 15, which provides:

" *'Taking'* includes pursuing, shooting, killing, capturing, trapping, snaring and netting wild animals, and all lesser acts such as disturbing, harrying or worrying or placing, setting, drawing or using any net, trap or other device used to take wild animals, *and includes every attempt to take* and every act of assistance to any other person in taking or attempting to take wild animals.". (Italics supplied.)

Defendants contend their convictions cannot be sustained for the reasons: (1) That the state failed to prove beyond a reasonable doubt that they had the specific intent to hunt or take migratory waterfowl without being. partially concealed by natural vegetation; (2) that the complaints failed to allege such specific intent; and (3) that the state failed to prove beyond a reasonable doubt that the natural vegetation surrounding their duckblind was insufficient to partially conceal them.

We turn to defendants' contention that a specific intent is an essential element of any criminal *attempt to take* waterfowl in violation of § 100.29, subd. 17. It is to be noted that § 97.40, subd. 15, insofar as here applicable, defines *taking* as *including every attempt to take* migratory waterfowl. Defendants allege that they in good faith believed that they were adequately concealed by natural vegetation and that their conviction cannot be sustained because the state did not prove that they specifically intended to take waterfowl *without being partially concealed*. There is no merit in the contention that the element of specific intent is essential to sustain a conviction of an attempt to take waterfowl in contravention of § 100.29, subd. 17. It is well settled that the legislature may forbid the doing of an act and make its commission criminal without regard to the intention, knowledge, or motive of the doer.[1]

In the instant case defendants were charged with taking waterfowl without being partially concealed by natural vegetation.[2] The law which

---

[1]See, State v. Lanesboro Produce & Hatchery Co. 221 Minn. 246, 21 N. W. (2d) 792, 163 A. L. R. 1108; 5 Dunnell, Dig. (3 ed.) § 2409.

[2]The complaints in both cases stated a violation of § 100.29, subd. 17, and stated the violation in the language of this section. The complaints inadvertently referred to the violated section as § 100.28, subd. 17. Counsel for the defendants, however, admitted they were properly apprised of the

they were charged with violating is found in M. S. A. cc. 97 to 102. The definitions applicable to this division provide that the use of the word "taking" anywhere in said chapters includes *an attempt to take.* In other words, both the taking of migratory waterfowl and the attempt to take, without being partially concealed by natural vegetation, are violations of § 100.29, subd. 17. An attempt to take is therefore not a distinct crime under the provisions of § 100.29, subd. 17. In view of the definition given to "taking" by § 97.40, subd. 15, § 100.29, subd. 17, is violated equally by attempting to take waterfowl or by actually killing waterfowl and a specific intent is not an essential element of the violation. Any other interpretation would be contrary to the plain meaning of the statute and in addition would open up the game protection laws to deception and evasion.

Defendants cite the case of State v. Ward, 225 Minn. 208, 30 N. W. (2d) 349, in support of their contention that a specific intent is an essential element. The Ward case is not in point. In that case the defendant was charged under § 610.27 which provides that an act done *with an intent* to commit a crime and tending, but failing to accomplish it, is an attempt to commit the crime. In other words, the Ward case is based on the violation of a statute which makes a specific intent an essential element. It is to be noted that in the Ward case the defendant was not charged with violating § 100.27, subd. 4, (which regulates the taking of beaver) wherein the *taking* of beaver, like the *taking* of waterfowl in violation of § 100.29, subd. 17, is qualified by the definition of *taking* in § 97.40, subd. 15. Since the defendant was prosecuted in the Ward case for a violation of a separate and distinct statute, the decision has no application to the case at bar.

Since a specific intent is not an essential element of the crime of taking waterfowl in violation of § 100.29, subd. 17, there is likewise no merit in defendants' contention that the complaints are insufficient and defective for failure to charge defendants with a specific intent to violate the law.

---

violation with which they were charged. Although the state discusses this issue in their brief, nowhere in the appellants' brief is this question raised or discussed. Only the sufficiency of the complaint—since no specific intent to take birds without being partially concealed is alleged—is at issue.

We next turn to defendants' final contention that the state did not prove beyond a reasonable doubt that the natural vegetation was insufficient to partially conceal the defendants on the day of the alleged offense. In considering whether the evidence supports the convictions, we must view the credible testimony and facts proved in their aspects most favorable to the verdict. State v. Ward, 225 Minn. 208, 30 N. W. (2d) 349. In so viewing the evidence, we find that it is sufficient to support the trial court's determination that there was not sufficient natural vegetation to provide partial concealment.

The game warden upon whose testimony the complaint was issued testified that the blind was situated roughly in the center of the lake and that on the date of the alleged offense, he observed the blind from a distance of 500 to 600 feet through field glasses. The blind, he said, was constructed of willow branches cut from shoreline willows and that the nearest natural vegetation was located 100 to 150 feet from the blind. A measurement made on October 24 set the distance at 140 feet. A closer inspection made on October 24 showed no natural vegetation present on the surface of the water or bent over in the vicinity of the blind. The warden further testified that he could observe no change in the physical appearance of the blind from October 11 to October 24. Weather reports admitted in evidence indicated that the first killing frost did not occur until October 28, which refutes the contention that the natural vegetation was destroyed or weakened by cold weather between October 11 and October 24. Even with the added artificial material, defendants, while in the blind, were clearly visible to the warden.

Game Warden Boyd, also present on the day of the alleged violation, testified that the vegetation in Grass Lake was in unusually bad shape in 1953 because of an unusual third flood which ruined the vegetation. On October 11 he could observe no vegetation within the vicinity of the blind; the closest being 100 feet or so away. When he inspected the blind on the 24th, he found vegetation under water near the blind, but none above the water. The defendants contend that vegetation present on the day of the alleged violation, October 11, had been cut down by muskrats before the inspection of the 24th, but the game warden testified that there was no material growing near the blind which

was similar to that which had been piled in the blind by the muskrats.

A volunteer game warden testified that he had observed the blind the day before the violation through field glasses and could see no vegetation in the vicinity of the blind.

Since the evidence is adequate to sustain a finding beyond a reasonable doubt that there was no sufficient natural vegetation to partially conceal the defendants and since there were no errors of law, the findings and conclusions of the district court must be sustained and the orders of the trial court are affirmed.

Affirmed.