**STATE of Minnesota, Respondent,**

v.

**Charles Michael SUTER, Appellant.**

**No. C2–83–1374.**

Court of Appeals of Minnesota.

April 4, 1984.

Dale Blanshan, Bemidji, for appellant.

James R. Wilson, Clearwater Co. Prosecutor, Michael D. Miller, Bagley, for respondent.

Considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Charles Suter was charged with killing an antlerless deer in violation of Minn.Stat. § 97.48, subd. 1, and Commissioner's Order No. 2125, section 13(e). The charge is a misdemeanor under Minn.Stat. § 97.55, subd. 1. The appellant waived his right to a jury trial. Instead, both parties submitted the matter to the trial court on stipulated facts. The trial court found the defendant acted intentionally in firing his gun in the direction of the deer, and therefore, guilty of violating the Commissioner's Order. The trial court imposed a fine of $100 together with costs and the statutory surcharge or 10 days in the county jail and stayed the sentence pending this appeal. We affirm.

## Facts

On November 7, 1982, Suter entered the woods with a valid deer license intending to hunt deer. He saw three deer enter the surrounding area, realizing one to be an antlerless deer. He watched as two of the deer, a buck and a doe, came into view, with the smallest deer not in sight. He fired once at the buck, however, his shot killed the antlerless deer. Suter did not hold a permit to kill an antlerless deer.

## Issue

Do the stipulated facts sustain the trial court's finding that Suter had the intent necessary to hold him criminally liable for the killing of an antlerless deer without a permit in violation of Minn.Stat. § 97.48, subd. 1, and Commissioner's Order No. 2125, § 13(e)?

## Analysis

The Minnesota legislature has delegated general powers to the Commissioner of Natural Resources including the following:

The Commissioner may extend protection to any species of wild animal in addition to that accorded by chapters 97 to 102, by further limiting or closing open seasons, areas of the state, or by reducing limits with respect to any or all areas of the state, whenever he finds such action necessary to guard against undue depletion or extinction, or to promote the propagation and reproduction of such animals.

Minn.Stat. § 97.48, subd. 1. Consistent with constitutional requirements, a legislature must establish a "reasonably clear policy or standard of action" to guide the agency's exercise of discretion. *Anderson v. Commissioner of Highways*, 267 Minn. 308, 311, 126 N.W.2d 778, 780 (1964).

Here, the relevant statute identifies the means by which the commissioner may extend such protection as "further limiting

or closing open seasons, areas of the state, or * * * reducing limits with respect to any or all areas of the state * * *." Minn.Stat. § 97.48, subd. 1. Additionally, that statute requires the commissioner to find "such action necessary to guard against undue depletion or extinction, or to promote the propagation and reproduction of such animals." Minn.Stat. § 97.48, subd. 1.

The language of Minn.Stat. § 97.48, subd. 1, provides a sufficient "standard of action" to guide the commissioner. Pursuant to his authority, the commissioner promulgated Order No. 2125, Minn.Admin. Reg. 438 (1982). Section 13(e) of that order stated in part that "[a]nyone who shoots at or kills an antlerless deer must have an antlerless permit for the permit area in which the antlerless deer is taken." Commissioner's Order No. 2125, 7 Minn.Admin. Reg. 438, 450 (1982).

The legislature established further guidelines when it provided that:

Except as specifically permitted in chapters 97 to 102, no person may take, buy, sell, transport, or possess any protected wild animals of this state * * * without first procuring a license therefor as provided in section 98.46 or in section 98.48.

Minn.Stat. § 98.45, subd. 1. The legislature also classified a violation of any provisions in Chapters 97 to 102 or of a commissioner's order as a misdemeanor. Minn. Stat. § 97.55, subd. 1. We hold that the legislature's delegation of authority to the commissioner and the commissioner's promulgation of Order No. 2125, complies with constitutional requirements.

Here, the language of the relevant statutory provisions and commissioner's order mentions no intent requirement. In the absence of any language of intent, Minn. Stat. § 97.48, subd. 1, and Commissioner's Order No. 2125, § 13(e) do not require any showing of specific intent.

██ Substantial case law supports the principle that "the legislature may forbid the doing of an act and make its commission criminal without regard to the intention, knowledge or motive of the doer." *State v. Kremer*, 262 Minn. 190, 191, 114

N.W.2d 88, 89 (1962); *State v. O'Heron*, 250 Minn. 83, 85, 83 N.W.2d 785, 786 (1957). Furthermore, the legislature has power to define what acts constitute criminal conduct and power to prescribe punishment for such acts. *State v. Osterloh*, 275 N.W.2d 578, 580 (Minn.1978).

The Minnesota Supreme Court discussed this principle in *Kremer*. That court noted that:

It is not essential that the wrongdoer should intend to commit the crime to which his act amounts, but it is essential that he should intend to do the act which constitutes the crime.

*Kremer*, 262 Minn. at 191, 114 N.W.2d at 89 (citing 5 Dunnell, Dig. (3 ed.) § 2409). In *Kremer*, the defendant was charged with driving through a "red flashing" light in violation of a city ordinance. The trial court had found the defendant (1) could not stop as his car brakes failed to operate, (2) had experienced no prior brake trouble, and (3) had no knowledge that his brakes were defective. On the grounds that the only relevant issue was whether the defendant did the act, however, the trial court found the defendant guilty. *Kremer*, 262 Minn. at 191, 114 N.W.2d at 89.

The *Kremer* court analyzed the rationale for imposing absolute liability in criminal cases. That court noted that:

[E]ven though a person does not criminally intend the harm caused by his acts, he "usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities."

*State v. Kremer*, 262 Minn. at 191, 114 N.W.2d at 89 (1962), (quoting *Morissette v. United States*, 342 U.S. 246, 256, 72 S.Ct. 240, 246, 96 L.Ed. 288, 297 (1952)).

Recognizing that the facts showed "no negligence and no intent to do the act which turned out to be criminal," the *Kremer* court refused to sustain the defendant's conviction. Under such circumstances, that court noted that the rationale of imposing absolute liability does not ap-

ply. *State v. Kremer*, 262 Minn. at 191, 114 N.W.2d at 89.

In discussing this concept of absolute liability, the *Kremer* court indicated that if the defendant in that case had gone through a stop light that he did not see, "a court could be justified in finding him guilty of a violation of the ordinance involved. When the driver intends to proceed forward, or is negligent in any way, he can be held liable for his acts." *Kremer*, 262 Minn. at 192, 114 N.W.2d at 89.

■ Here, although Suter did not intend the resulting harm, he undisputably intended to fire his gun in the direction of the deer. When one is hunting for deer and shoots in the direction of deer known to be in the area, he risks liability for shooting a deer for which he has no permit. The necessary intent is supplied by the intentional firing of the gun.

Policy reasons support this conclusion. The United States Supreme Court recognized that public welfare may make it necessary to declare certain acts a crime, irrespective of the actor's intent. *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 68, 30 S.Ct. 663, 666, 54 L.Ed. 930, 935 (1910). The facts of that case involved the use and expiration of a permit to cut timber. The *Shevlin* court noted that:

> When the permit was issued, plaintiffs in error knew the limitations of it, and they took it at the risk and consequences of transgression. The state sought to guard against its wilful or accidental abuse. Permits had been abused and the lands of the state despoiled of their timber. The offenders were difficult to detect, or, if detected, the character of their acts, whether wilful, accidental, or involuntary, equally difficult to establish * *.

*Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 69, 30 S.Ct. 663, 666, 54 L.Ed. 930, 935 (1910).

These same considerations apply with equal force to the facts of this case. Suter entered the woods with only a deer license, not an antlerless permit. He assumed the risk of liability when he shot at the buck knowing an antlerless deer was nearby. Any other result would impose an almost impossible burden of proof on the state.

The defendant further contends that the trial court erred when it allegedly found defendant criminally liable on the basis of negligence. The order of the trial court contains ambiguous language concerning a finding of negligence and a finding that the defendant acted intentionally. Though the trial court refers to negligence, that is not the controlling factor. Even if the trial court erroneously considered the issue of negligence, its result is still correct.

### Decision

Based on the stipulated facts and case law, Suter assumed the risk of liability when he entered the woods intending to hunt deer and acted deliberately in firing his gun at a deer, while knowing that an antlerless deer was in the area. The trial court properly found him in violation of Minn.Stat. § 97.48, subd. 1, and Commissioner's Order No. 2125, section 13(e).

Affirmed.

WOZNIAK, Judge (dissenting).

This case is before us on stipulated facts. Those facts are the sole basis of this decision. They warrant a verbatim rendering:

> The defendant, possessing a valid license to take antlered deer at the time and in the area in which he was hunting, took up a position on a hillside at about 9:00 on the morning of November 7, 1982. After a wait of about half an hour, he heard a noise about 100 yards away and slightly to his left, and three deer came into view. The largest was a six or seven point buck, accompanied by a smaller doe and a still smaller antlerless deer. He watched the deer moving through the brush when, at a point about 90 yards in front of him, the head and shoulders of the buck came clearly into view, with the doe farther behind. The smallest deer was not in sight. Mr. Suter fired one shot at the buck, but both deer bounded away. He walked down

the hillside to confirm the miss, and found, about 15 yards beyond the point where the buck had been, a small deer without antlers lying dead.

The result of this decision is to subject a hunter to a possible jail sentence for being a poor shot. I would reverse.

He was found guilty of "taking" an antlerless deer that he did not intend to "shoot at or kill," and did not even see when he took aim at the buck.

I. Under the Commissioner's order, "[a]nyone who *shoots at or kills* an antlerless deer must have an antlerless permit ..." (commonly referred to as a "doe permit"). The majority misconstrues this language. The Commissioner wishes to charge anyone who deliberately shoots *at* an antlerless deer and misses. Obviously, deliberate shooting at and killing an antlerless deer is a violation. Here, defendant did not point his gun at, he did not shoot at, an antlerless deer. He intended to, and did, point his gun at a buck, an act authorized by the license he had obtained. The intent would lie not in firing a gun, a legal act under these facts, but in firing *at* an antlerless deer. Defendant was doing nothing more than exercising his lawful privilege to hunt deer. Defendant is chargeable only with the intention of and attempt to lawfully exercise his privilege of hunting antlered deer, and since the result, the killing of an antlerless deer, was accidental and unforeseen, this conduct cannot be elevated to the status of criminal activity. The legislature has not yet imposed upon hunters the burden of striking every target.

II. It is settled law that penal provisions must be strictly construed, and before a person may be subject to criminal liability, it must be reasonably certain that the statute renders his conduct a criminal offense. *State v. Kuluvar*, 123 N.W.2d 699 (1963). The majority has admitted that the legislature must establish a "reasonably clear policy or standard of action" to guide the agency's exercise of discretion. *Anderson v. Commissioner of Highways*, 267 Minn. 308, 311, 126 N.W.2d 778, 780 (1964). Under the facts of this case, the legislature's delegation of authority to the Commissioner can hardly be established as "clear policy," particularly since the Commissioner is not in a proper position to determine intent requirements.

I am further troubled that the burden of proof has been switched in prosecuting alleged fish and game law violators. In a prosecution, "the burden of establishing ... [a lawful taking] ... shall rest upon the defendant." Minn.Stat. § 97.54 (1982). This contravenes the constitutional principal that a criminal defendant, which an alleged fish and game law violator is, is deemed innocent until proven guilty. Should not alleged fish and game law violators be given the same protection as an alleged thief or burglar?

III. The majority held that the legislature (not the Commissioner) may forbid the doing of an act and make its commission criminal without regard to the intention, knowledge, or motive of the doer. I agree. While it is not essential that the wrongdoer should intend to commit the crime to which his act amounts, "it it essential that he should intend to do the act which constitutes the crime." *State v. Kremer*, 262 Minn. 190, 114 N.W.2d 88 (1962). The criminal act is the firing *at* an antlerless deer.

In *Kremer*, the defendant was charged with driving through a "red flashing" light in violation of a city ordinance. The Supreme Court reversed the defendant's conviction. He had not intended the criminal act. The defendant (1) could not stop as his car brakes had failed to operate, (2) had experienced no prior brake problem, (3) had no knowledge that his brakes were defective. Here, the defendant Suter did not fire at the antlerless deer; he intended to and did fire at the buck. He did not intend the criminal act.

The majority relies upon the following rationale in *Kremer* for imposing absolute liability in this case:

[E]ven though a person does not criminally intend the harm caused by his acts, he *"usually is in a position to prevent*

*it with no more care than society might reasonably expect and no more exertion than it might reasonably exact* from one who assumed his responsibilities".

*Id.* at 192, 114 N.W.2d at 89 (emphasis added).

In this case, the antlerless deer was 15 feet behind the buck and out of defendant's vision. Defendant shot at the buck and missed, a mere errant shot. His shot may have been deflected by a branch or twig. It is even possible to have passed through the buck without killing it, continued on and killed the antlerless deer. This was a strictly accidental killing of an antlerless deer. Nothing short of simply not firing could have prevented this accident.

IV. If there is *absolute* liability, as the majority holds, then nothing in the statute justifies the majority's reading into the law an exception for "accidental discharge." Any killing, whether accidental or not, would be technically an illegal taking. Indeed, the DNR interprets the statute that way. Hitting a deer with your car, let alone the accidental firing of a gun, is an illegal taking.

The majority, however, does not read the statute literally. They read into the statute an arbitrary line: those who accidentally fire their guns are not in violation; those who fire but accidentally miss the intended target are in violation.

If one is going to read into the statute a limitation, this particular one does not make sense; the facts of this case point out the inequity of the majority's arbitrary line. Defendant saw and attempted to shoot a buck which he legally had the right to take. The path of a bullet in a forested area can be deflected by the smallest of twigs. There is no showing of anything but lawful intent. Why defendant with no unlawful intent should be prosecuted and some other hunter who with no unlawful intent accidentally fires and kills a deer should not be prosecuted is not explained by the majority.

A hunter who in all good faith attempts to hunt legally but through mistake or accident takes a deer should not be prosecuted without more. If he did more, such as transporting or processing the deer, then he has shown an intent worthy of prosecution. To criminally prosecute a hunter only for being a poor shot, however, is a travesty. I do not believe that defendant's conduct is the kind of conduct which the legislature meant to proscribe.