**STATE of Minnesota, Respondent,**

v.

**Roger Benedict SCHMID, Appellant.**

**No. A13–0337.**

Court of Appeals of Minnesota.

Dec. 23, 2013.

Wilson, Assistant County Attorney, Kevin M. Voss, Assistant County Attorney, Carl Ole Tvedten, Assistant County Attorney, St. Cloud, MN, for respondent.

John J. Neal, Willenbring, Dahl, Wocken & Zimmerman, PLLC, Cold Spring, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; HUDSON, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

A game warden found Robert Schmid in a deer blind in a deer-hunting area during hunting season dressed in blaze orange clothing and armed with a shotgun loaded with deer slugs. Schmid appeals from his conviction of hunting deer without a license. He maintains that the deer-hunting statute, which prohibits "pursuing" game without a license, does not include his conduct because "pursuing" game implies only direct pursuit, such as tracking or chasing game. Because we hold that "pursuing" deer includes Schmid's act of entering deer habitat to intercept and shoot a deer, we affirm.

## FACTS

DNR officer Chad Thesing encountered Roger Schmid at 8:00 on a Sunday morning in November 2011 in an area in Stearns County where deer were being hunted. It was deer-hunting season. Schmid was sitting on his ATV enclosed in a camouflage deer blind. He wore blaze orange clothing, and a 12–gauge shotgun equipped with a scope and loaded with four deer slugs sat beside him.

Schmid told Officer Thesing that he had shot and killed a deer the previous evening. Officer Thesing asked to see

Lori Swanson, Attorney General, St. Paul, MN; and Janelle P. Kendall, Stearns County Attorney, Caitlyn M. Prokopowicz

Schmid's hunting license. He noticed that Schmid's license was missing a site tag, and Schmid admitted that he lacked a bonus permit to shoot a second deer. Officer Thesing told Schmid he would cite him for hunting deer without a license, a violation of Minnesota Statutes section 97B.301, subdivision 1 (2010). While Officer Thesing prepared to write the citation, Schmid volleyed various persuasions of innocence: he was hunting in a deer-hunting party with others; he was actually only nature watching; he was coyote hunting rather than deer hunting. Officer Thesing, not persuaded, issued the citation.

Schmid fought the citation. Before trial, he moved the district court to dismiss the charge because he claimed that his actions were not "hunting" or "attempting to hunt" under this court's decision in *State v. Ritter*, 486 N.W.2d 832 (Minn.App.1992), *review denied* (Minn. Aug. 27, 1992). The district court denied the motion. At trial, Schmid and his wife testified that Schmid was not hunting but merely awaiting help to retrieve the deer he shot the previous day—an exculpatory explanation that differed from the three that Schmid had offered to Officer Thesing. Schmid moved for judgment of acquittal. The district court denied the motion, and the jury found him guilty of hunting deer without a license.

Schmid appeals the conviction.

## ISSUE

Does entering a deer-hunting area, sitting in a camouflage deer blind, and being armed with a weapon loaded with deer-hunting ammunition while waiting for a deer to shoot constitute "pursuing" deer under Minnesota Statutes section 97A.015, subdivision 47 (2010)?

## ANALYSIS

■ Schmid argues essentially that the evidence is not sufficient to convict him of hunting deer without a license because the statute does not prohibit the conduct he engaged in. This raises a legal question, and we review the district court's interpretation of statutes de novo. *State v. Ritter*, 486 N.W.2d 832, 834 (Minn.App.1992), *review denied* (Minn. Aug. 27, 1992). The hunting-without-a-license statute under which Schmid was convicted states, in relevant part, "A person may not take deer without a license." Minn.Stat. § 97B.301, subd. 1 (2010).

Schmid says he was not "taking" deer. "Taking" is defined by chapter 97A to mean "pursuing, shooting, killing, capturing, trapping, snaring, angling, spearing, or netting wild animals, or placing, setting, drawing, or using a net, trap, or other device to take wild animals. Taking includes attempting to take wild animals, and assisting another person in taking wild animals." Minn.Stat. § 97A.015, subd. 47; *see id.*, subd. 1 (explaining the applicability of the definitions contained in chapter 97A to chapter 97B). The statute does not define "pursuing."

Schmid argues that the district court misinterpreted the term "taking" as applied in *Ritter*. Schmid's reliance on *Ritter* is off target. In *Ritter*, we applied the "taking" definition to a hunting-while-intoxicated statute that made it a crime to "take protected wild animals . . . while under the influence of alcohol or a controlled substance." 486 N.W.2d at 833 (citing Minn.Stat. § 97B.065 (1990)). We held that Ritter was not "taking" animals because he was outside the hunting area and his gun was not loaded. *Id.* at 834. We reasoned that his "conduct, although preparatory to hunting, did not constitute attempting to take within the meaning of [section 97A.015, subdivision 47]." *Id.* We reject Schmid's assertion that his conduct was only "preparatory" to hunting. Un-

like Ritter, Schmid had entered a hunting area, concealed himself behind his blind, and possessed a shotgun loaded with deer slugs. *Ritter* is inapplicable.

Our review of the statutes convinces us that Schmid's actions constitute "pursuing," which is one of the acts listed as "taking" in the inclusive definition. Schmid asserted at trial and again in oral argument before this court that he was not "pursuing" deer because he was not physically chasing them. Only a deer hunt that involves a foot pursuit, he suggests, would fit the statute. We give words their "common and approved" meaning. Minn.Stat. § 645.08, subd. 1 (2012). Pursuit of course can mean physically chasing, but it would be silly to limit it to that meaning, especially in the deer-hunting context.

"Pursue" has become a broadly nuanced verb. It dates back more than seven centuries, *The Compact Oxford English Dictionary* 1474 (2d ed.1991), and it evolved into English by way of Middle English from Anglo–Norman from Vulgar Latin from Latin, *The American Heritage College Dictionary* 1112 (3d ed.2000). It shares a root variant with the Latin word meaning "to follow," from which we derive "suit" and "pursuit." *The Compact Oxford English Dictionary* at 1474. Not surprisingly then, its specific meaning today varies widely depending mainly on its context while its general meaning "to follow" is constant. For example, Thomas Jefferson envisioned a nation where everyone could pursue happiness. *The Declaration of Independence* para. 2 (U.S.1776). One biblical writer urges believers to "[p]ursue peace with all men." *Hebrews* 12:14 (New American Standard Bible). Athletes pursue championships and students pursue degrees. Justice William Mitchell wrote about pursuing a course, a proceeding, and a remedy, among other things. *See Kelly v. S. Minn. R. Co.,* 28 Minn. 98, 102, 9

N.W. 588, 590 (1881) (a course); *Weaver v. Miss. & Rum River Boom Co.,* 30 Minn. 477, 480, 16 N.W. 269, 270 (1883) (a proceeding); *Jenks v. Ludden,* 34 Minn. 482, 486, 27 N.W. 188, 190 (1886) (a remedy). So while a "pursuit" might involve a foot chase, it need not. A young romantic "pursues" a mate, ordinarily without a foot chase. We are not confused that a police officer both pursues her career and pursues a suspect. The varied current meaning includes "to chase," as Schmid contends, but it also includes "to seek after; to try to obtain or accomplish." *The Compact Oxford English Dictionary* at 1474.

"Pursue" is similarly nuanced in the hunting context. For example, the hunter commonly pursues (as in "seeks after" or "tries to obtain") game birds using a flushing dog. *See* Tom Carpenter, *Timber Rockets: Ruffed Grouse and Woodcock,* Outdoor Life, Aug. 2013, at 54; Brian Lynn, *Prairie Slam: Pheasants, Sharptails, Huns, and Sage Grouse,* Outdoor Life, Aug. 2013, at 58. The dog runs ahead to ruffle the brush, frightening the birds and exposing them to the hunter's shot as they take flight. The hunter has moved into the birds' habitat intending to fire on them when he has the chance. The armed hunter tromping through the brush is pursuing the birds. No direct chasing is involved; the hunter need not take flight. This is undisputed, as Schmid conceded through counsel at oral argument that entering pheasant habitat in this way constitutes "pursuing" pheasants in a pheasant hunt.

Waterfowl are pursued differently. A hunter studies the birds and moves into an area where he expects to intercept them. *See* Will Brantley, *Here Come the Teal,* Field & Stream, Sept. 2013, at 32–33. He places decoys to fool his prey, and he camouflages himself so the birds approach unaware, close enough for him to fire on

them. *See* Phil Bourjaily, *O Canada!*, Field & Stream, Sept. 2013, at 29.

Fox hunts using hounds in a direct physical chase are not unheard of, *see* Minn. Dep't of Natural Res., *2013 Minnesota Hunting & Trapping Regulations Handbook* 27 (2013), but a hunter more commonly closes the distance to a fox by mimicking the sounds of a dying rabbit to draw it in, Clyde Ormond, *Outdoorsman's Handbook* 7 (1970). Although neither the hunter nor his dog is bounding after the fox, the hunter who enters the prey's habitat and lures it for a shot is nevertheless fox hunting.

Turkey hunting might provide the closest example of the type of "pursuing" that fits Schmid's proposed statutory meaning. A turkey hunter enters the woods and searches for recent markings. David Draper, *Kill Your Thanksgiving Dinner*, Field & Stream, Nov. 2013, at 38. The hunter creeps up on the flock, sprints to the middle of it, and then "yell[s], whoop[s], [and] clap[s]." The turkeys flee. The hunter does not chase but waits in camouflage to shoot the hapless hens as they find their way back. *Id.* at 38. In the hunting context, it would be absurdly literal to say that his initially entering the flock is "pursuing" while his waiting under cover for a returning bird is not.

Hunting deer involves entering deer habitat, anticipating a point of interception, and waiting to take a shot. The hunter studies deer behavior and puts himself in position to shoot. Daniel E. Schmidt, *Whitetail Wisdom* 42–65 (2005).

He relies on deer trails and food sources. Craig Dougherty, *First Blood*, Outdoor Life, Sept. 2013, at 60. He searches for bark rubs and tree scrapes. Schmidt, at 158. The hunter enters a blind or a tree stand armed with a weapon loaded with ammunition capable of killing a deer, and he awaits his prey.

■ We believe that the legislature understood that different animals are hunted using different methods and that a person may "pursue" an animal to fire on it using any pursuit method, whether aggressively or passively. Fairly and reasonably applying the statute to deer hunting, pursuit occurs when the hunter has taken action to close the distance between himself and the deer by entering its habitat to shoot it; that the hunter intentionally intercepts his prey rather than overtakes it from behind does not disqualify the conduct as pursuit. Schmid's construction to the contrary would mean that the legislature deems it illegal to lie in wait for fish without a license ("angling"), Minn.Stat. § 97C.301, subd. 2 (2010), but not to lie in wait for other prey without a license. We do not accept this construction.[1]

We hold that entering a deer-hunting area and sitting in a blind armed with a deer-hunting weapon loaded with deer-hunting ammunition is "pursuing" deer within the meaning of section 97B.301. This is how Officer Thesing encountered Schmid. The only remaining element, intent, may be readily inferred from the circumstances. This is especially so here,

---

1. This is not to say that one *cannot* physically pursue deer by chasing them. But deer can run 40 miles per hour, so it would be futile. *Deer*, 6 Academic American Encyclopedia 79, 81 (1991). And it can be dangerous. Last year two Iowa bow hunters spotted a deer herd and ran after it, arrows in hand. One fell, cutting his head, and his partner landed on top, impaling him from behind. *See* Iowa Dep't of Natural Res., *Two Men Charged with Multiple Deer Hunting Violations*, Nov. 27, 2012, *available at* http://www.iowadnr.gov/fishing/ctl/detail/mid/2780/itemid/1097. We agree with Schmid that this kind of chase would constitute a pursuit. But we are satisfied that the statute also covers more common deer-hunting methods, like the one involved here.

given the credibility deficit that Schmid created by offering multiple conflicting explanations. The district court correctly applied the statute, and the evidence supports Schmid's conviction of taking deer without a license.

## DECISION

Because we hold that Schmid's actions constitute "pursuing" within the definition of Minnesota Statutes section 97A.015, subdivision 47, we affirm.

**Affirmed.**