STATE OF MINNESOTA

IN SUPREME COURT

A13-0337

Court of Appeals                                                          Lillehaug, J.

State of Minnesota,

          Respondent,

vs.                                                        Filed:  February 25, 2015
                                                          Office of Appellate Courts

Roger Benedict Schmid,

          Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Carl Ole Tvedten, Assistant Stearns County
Attorney, Saint Cloud, Minnesota, for respondent.

Daniel M. White, Scott M. Flaherty, Briggs and Morgan, P.A., Minneapolis, Minnesota;
and

John J. Neal, Willenbring, Dahl, Wocken & Zimmerman, PLLC, Cold Spring,
Minnesota, for appellant.

_____

S Y L L A B U S

1.      In Minnesota's game and fish laws, the definition of "taking" in Minn. Stat.

§ 97A.015, subd. 47 (2014), applies to "take" in Minn. Stat. § 97B.301, subd. 1 (2014).

2.      A jury could reasonably conclude that a person who sat in a camouflaged

ATV blind in a field during deer hunting season, wore blaze orange, and had a loaded

1

gun next to him, was "pursuing" or "attempting to take" deer, and therefore violated Minn. Stat. § 97B.301, subd. 1.

Affirmed.

O P I N I O N

LILLEHAUG, Justice.

A Department of Natural Resources officer encountered Roger Schmid sitting in a camouflaged ATV blind in an open field, wearing blaze orange, and possessing a loaded gun. Schmid was charged and convicted under Minn. Stat. § 97B.301 (2014), which states that a person may not "take" deer without a license. Schmid moved for a judgment of acquittal. The district court denied his motion, and the court of appeals affirmed. The court of appeals defined "take" by the statutory definition of "taking," which includes "pursuing" and "attempting to take," and held that Schmid's conduct constituted "pursuing" deer.

On review by our court, the first issue is whether to define "take" by its narrower common law definition or by the broader statutory definition of "taking." The second issue is whether Schmid's actions constituted a "take" under the applicable definition. We hold that the statutory definition of "taking" applies to "take," and under that definition, a jury could reasonably conclude that Schmid was "pursuing" or "attempting to take" deer, and thus violated Minn. Stat. § 97B.301, subd. 1. Therefore, we affirm.

I.

Chad Thesing, a DNR enforcement officer, received a complaint about hunting activities on the evening of November 12, 2011. The next morning, while he investigated

2

the complaint, Officer Thesing observed Schmid sitting on his ATV in an open field. Schmid had raised a folding camouflage blind on the ATV. Officer Thesing approached Schmid's blind and saw that Schmid was wearing blaze orange clothing. Schmid told Officer Thesing that he had killed a deer the previous evening. Discovering that Schmid had a loaded gun with him on the ATV, Officer Thesing performed a regulatory check of Schmid's license and permit.

Schmid possessed an expired permit to hunt from a motor vehicle. He also possessed what appeared to be a valid hunting license. However, Officer Thesing noted that the site validation tag was missing from the license.[1] Officer Thesing informed Schmid that a hunter may only tag multiple deer if part of a hunting party or possessing bonus tags. Because Schmid was hunting alone and did not possess a bonus tag, Officer Thesing informed him that he was hunting with an invalid license. Officer Thesing told Schmid that he would "give him a break" and write him a citation for a lesser charge. Schmid immediately became hostile. According to Officer Thesing, Schmid was angry to be charged with "a chicken shit violation."[2] Officer Thesing then advised Schmid that he was going to write a citation for the more serious charge.

---

[1] In November 2011, hunting regulations required that a deer be "tagged at the site of kill." Minn. R. 6232.0300, subp. 6(B) (2013). A deer tag must be affixed around the deer's hind leg, around an antler, or through a slit cut in either ear. Minn. R. 6232.0300, subp. 5 (2013). A deer tag must be validated by marking, with a knife or pen, the month, date, and time of day the deer was taken. Minn. R. 6232.0300, subp. 6(B).

[2] Schmid admitted at trial that he had "choice words" for Officer Thesing, but explained that he was upset because he believed that he did nothing wrong.

3

At that point, according to Thesing, Schmid gave several different reasons as to why he was in the field.[3] He first said that he was part of a hunting party. Officer Thesing questioned that story, as Schmid's claimed hunting partners did not typically hunt.[4] Schmid then told Officer Thesing that he was not hunting, but rather was out "nature watching." Then, Schmid claimed that he was coyote hunting. Not believing any of Schmid's assertions, Officer Thesing issued Schmid a citation for hunting deer without a valid license, in violation of Minn. Stat. § 97B.301, subd. 1, which states that a person "may not take deer without a license."

Before trial, Schmid moved the district court to dismiss the charge, arguing that there was no evidence that he was "taking" a deer, which he defined by reference to Minn. Stat. § 97A.015, subd. 47 (2014), as "pursuing, shooting, [or] killing . . . wild animals," or "attempting to take wild animals." The court denied his motion.

At trial, Schmid testified that he was in the field to pick up a deer that he had shot just before dark the previous day. He was unable to load it onto his ATV, so he tagged it and left it in the field. He testified that he came out the next morning to try again to load it, but was unsuccessful. So, he decided to wait until his wife got home from church so that she could help him.

---

[3]    Schmid acknowledged that he was angry and that he gave some excuses, but it "was all [g]ibberish at that point."

[4]    Officer Thesing later confirmed with the alleged hunting partners that they were not hunting that day.

Schmid testified that he wore blaze orange for safety reasons and because the law required him to do so. *See* Minn. Stat. § 97B.071(a) (2014) (requiring blaze orange if hunting or trapping during open season "where deer may be taken by firearms"). He further testified that he possessed a loaded gun because it is "common sense," and because there could have been coyotes preying on the tagged deer carcass. The blind was up to keep him warm while he waited, he said. Schmid asserted that the carcass was actually within 30 feet of the ATV, but that Officer Thesing did not see it.

In response, Officer Thesing testified that at no point did Schmid explain that he was in the field waiting to transport a tagged deer carcass. Officer Thesing recalled that he observed a gut pile near Schmid, but did not observe a carcass.

The district court instructed the jury that under Minnesota law "a person may not take a deer without a valid license," and that it needed to determine whether Schmid "was taking a deer." The court defined "taking" by its statutory definition under section 97A.015, subdivision 47: "pursuing, shooting, killing, [or] capturing . . . wild animals. Taking includes attempting to take wild animals, and assisting another person in taking wild animals." The jury found Schmid "guilty of the charge of taking deer without a license."

Schmid moved for a judgment of acquittal, arguing for the first time that the statutory definition of "taking" did not apply to "take" in Minn. Stat. § 97B.301. Schmid instead contended that "take" was defined by the narrower common law definition: "to gain possession or control." Schmid argued alternatively that his conduct did not constitute "taking" under the statutory definition. The district court denied the motion.

5

Schmid appealed his conviction, and the court of appeals affirmed in a published decision. *State v. Schmid*, 840 N.W.2d 843 (Minn. App. 2013). Like the district court, the court of appeals used the statutory definition of "taking" to define "take."[5] *Id*. at 845. The court of appeals rejected Schmid's argument that one must chase deer in order to "pursue" them. *Id*. at 846-47. The court of appeals reasoned that "it would be silly" to limit pursuit to a physical chase, "especially in the deer-hunting context." *Id*. at 846. Citing hunting articles and books, the court determined that "pursuit" in the deer hunting context had a particular definition: "entering deer habitat, anticipating a point of interception, and waiting to take a shot." *Id*. at 847. The court of appeals held that "entering a deer-hunting area and sitting in a blind armed with a deer-hunting weapon loaded with deer-hunting ammunition is 'pursuing' deer within the meaning of section 97B.301." *Id*.

We granted Schmid's petition for review.

## II.

We consider first the meaning of the word "take." Schmid argues that "take" in Minn. Stat. § 97B.301, subd. 1, is defined by the common law: to acquire possession or control. Because he did not acquire possession or control of a deer on the day in question, Schmid argues, he did not violate the statute. Evaluating whether Schmid's conduct was sufficient to convict him under the statute requires us to define "take," a question of law that we review de novo. *State v. Peck*, 773 N.W.2d 768, 771 (Minn.

---

[5] Although how to define "take" was squarely before the court of appeals, it did not analyze the issue or explain why it applied the statutory definition of "taking" to "take."

2009). After we define "take," we must examine whether "the evidence, viewed in the light most favorable to the State, is sufficient to sustain a conviction." *State v. Simion*, 745 N.W.2d 830, 841 (Minn. 2008).

A.

Minnesota Statutes section 97B.301, subdivision 1, states: "[a] person may not take deer without a license." The statute does not explicitly define "take," but Chapter 97B, along with Chapters 97A and 97C, is part of the "game and fish laws." Minn. Stat. § 97A.011 (2014). Chapter 97A defines "taking." *See* Minn. Stat. § 97A.015, subd. 47; *see also* Minn. Stat. § 97A.015, subd. 1 ("The terms defined in this section apply to this chapter and chapters 97B and 97C.").

In interpreting a statute, we must first determine "whether the statute's language, on its face, is ambiguous." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is unambiguous if, as applied to the facts of a case, it is not "susceptible to more than one reasonable interpretation." *A.A.A. v. Minn. Dep't of Human Servs.*, 832 N.W.2d 816, 819 (Minn. 2013). If a statute is unambiguous, then we "must apply the statute's plain meaning." *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010). We may use the canons of interpretation in Minn. Stat. § 645.08 (2014) to determine if a statute is unambiguous. *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 435 (Minn. 2009). We construe words and phrases "according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1). However, if words have acquired a special meaning, we construe them "according to such special meaning or their definition." *Id*. We do not turn to the common law definition of a word

7

if the statute provides its own definition. *Cf. State v. Soto*, 378 N.W.2d 625, 627 (Minn. 1985) (turning to the common law because the Legislature did not provide a statutory definition).

The statute before us is unambiguous, as only one reasonable interpretation exists: "take" is defined by the definition of "taking" in the game and fish laws.[6] By the rules of grammar, "take" and "taking" share the same underlying definition. "Take," as used in Minn. Stat. § 97B.301, subd. 1, is a verb. "Taking," as defined in Minn. Stat. § 97A.015, subd. 47, can be used as a verb, noun, or adjective. When "taking" is used as a verb it has the same underlying definition as the root verb "take." This is not to say that the two words are identical. Indeed, different tenses of words in a statute can lead to different meanings; a legislature's "use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992). However, different tenses exist to express differences in the time or duration of an action, not to express different underlying definitions. *See id.*; *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 232 (2d Cir. 1998); *The American Heritage Dictionary* 1408 (5th ed. 2011) (defining the progressive verb form that ends in "ing" as a form "that expresses an action or condition in progress"). Thus, the only definitional difference between the root "take" and the progressive form "taking" is the timing of the action.

Further, when "taking" is used as a gerund or adjective, the difference is not definitional, but syntactical. *See* Rodney Huddleston & Geoffrey K. Pullum, *The*

---

[6] Of course, our discussion here of the meaning of "taking" is not applicable to our "takings," or eminent domain, jurisprudence.

*Cambridge Grammar of the English Language* 81 (2002) ("A gerund is traditionally understood as a word *derived from a verb base* which functions as or like a noun . . . . The primary difference between a gerund and a participle, therefore, is that while a participle is functionally comparable to an adjective, a gerund is functionally comparable to a noun." (emphasis added)). The verb form is an action performed by a subject, modifiable by adverbs, while the noun form identifies the action as the object of a verb, modifiable by adjectives. *See The American Heritage Dictionary* 738 (5th ed. 2011) (defining a gerund as a "verbal noun"); *id.* at 1923 (defining a verbal noun as a "noun that is *derived from a verb* and usually preserves the verb's syntactic features, such as transitivity or the capability of taking nominal or verbal compliments" (emphasis added)). Thus, when "take" and "taking" are used in the same context, they have the same basic definition. *See id.* at 1775 (defining "taking" as "[t]he act of one that takes"). They are merely different syntactical forms of the same word.

Indeed, at common law, "take" and "taking" did not have substantively different definitions; both had the basic definition of reducing an animal to possession or control.[7]
*See Babbitt v. Sweet Home Ch., Cmtys for A Great Ore.,* 515 U.S. 687, 717-18 (1995)

---

[7] The cases cited by Schmid for the common law definition use the terms interchangeably. *See Hanson v. Fergus Falls Nat'l Bank*, 242 Minn. 498, 504, 65 N.W.2d 857, 862 (1954) ("Property Ratione privilegii is the right which . . . one man had of *killing and taking* animals Ferae naturae on the land of another; and in like manner the game, when *killed or taken* by virtue of the privilege, became the absolute property of the owner of the franchise . . . ." (emphasis added)); *Cohen v. Gould*, 177 Minn. 398, 399, 225 N.W. 435, 435 (1929) ("They bore . . . nothing to show the legality of their original *taking* or of the then possession of them by plaintiffs. In that situation, there was a statutory presumption that the skins had been unlawfully *taken*." (emphasis added)).

9

(Scalia, J., dissenting); 2 William Blackstone, *Commentaries on the Laws of England* 410 (1848) ("[T]he property of such animals ferae naturae . . . *with the right of pursuing, taking, and destroying them*: which is vested in the king alone, and from him derived to such of his subjects as have received the grants of a chase, a park, a free warren, or free fishery." (emphasis added)). When the Legislature modified the definition of "taking" from the common law, so too did it modify the definition of "take."

Even if there remained a question as to the definitional relationship between "take" and "taking," we do not write on a clean slate, as we have interpreted a similar statute. In *State v. O'Heron*, game wardens observed the defendants sitting in a duck blind in open water. 250 Minn. 83, 84, 83 N.W.2d 785, 786 (1957). The defendants were charged under the following statute:

> It shall be unlawful to *take* migratory waterfowl and rails in Open water when the hunter is not within a Natural growth of weeds, rushes, flags or other vegetation sufficient to Partially conceal the hunter or boat, or from a permanent artificial blind or sink box built in public waters, provided pursuing or shooting wounded birds in open water in a boat or canoe is permitted.

*Id.* at 84, 83 N.W.2d at 786 (emphasis added) (citation omitted). The statute defined "taking" as:

> [P]ursuing, shooting, killing, capturing, trapping, snaring and netting wild animals, and all lesser acts such as disturbing, harrying or worrying or placing, setting, drawing or using any net, trap or other device used to take wild animals, *and includes every attempt to take* and every act of assistance to any other person in taking or attempting to take wild animals.

*Id*. at 85, 83 N.W.2d at 786 (citation omitted). We applied the statutory definition of "taking" to define "take." *Id*. at 85, 83 N.W.2d at 786. We then upheld the conviction

10

because the charging statute was "violated equally by attempting to take waterfowl or by actually killing waterfowl." *Id*. at 86, 83 N.W.2d at 787. Although the defendants did not actually kill any waterfowl, their actions were an unlawful "attempt to take" waterfowl.

Schmid argues that the issue of whether the statutory definition of "taking" applies to "take" was not squarely before us in *O'Heron*. It is true that we did not explain our reasoning for applying the definition of "taking" in *O'Heron*. But the definition of "take" was necessary to our holding. *See id.* at 85-86, 83 N.W.2d at 787.

In 1986, almost 30 years after *O'Heron*, the Legislature enacted Minn. Stat. § 97A.015, subd. 47. Act of Mar. 20, 1986, ch. 386, art. 1, § 2, 1986 Minn. Laws 224, 228. The statute defined "taking" to include both "pursuing" and "attempting to take," the same as both its predecessor and the statute in *O'Heron. Compare* Minn. Stat. § 97A.015, subd. 47, *with* Minn. Stat. § 97.40, subd. 15 (1984). The Legislature had decades to adopt a different definition than *O'Heron* by expressly reverting to the common law definition of "take." It did not do so. We see no reason to change our interpretation of the term when the Legislature has also declined to do so. *See Park Const. Co. v. Indep. Sch. Dist. No. 32, Carver Cnty.*, 209 Minn. 182, 214, 296 N.W. 475, 490 (1941) ("The re-enactment of a statute without change after construction of the statute by the court is an adoption of such construction and gives it the force of law."); *Roos v. City of Mankato*, 199 Minn. 284, 288, 271 N.W. 582, 584 (1937) ("There is also the recognized and well-established principle of law that judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it

11

originally." (internal quotation marks omitted)); *Congdon v. Congdon*, 160 Minn. 343, 370, 200 N.W. 76, 86 (1924) ("Even an erroneous interpretation of a legislative enactment, acquiesced in for such length of time, ought not to be disturbed.").

Thus, applying both the rules of grammar and the long-standing precedent of *O'Heron*, the only reasonable interpretation of "take" in Minn. Stat. § 97B.301 incorporates the definition of "taking" from Minn. Stat. § 97A.015, subd. 47.

B.

An examination as a whole of what the Legislature has designated the "game and fish laws," Chapters 97A, 97B, and 97C, leads us to the same conclusion. We are to "read and construe the statute as a whole, giving effect wherever possible to all of its provisions, and 'interpret[ing] each section in light of the surrounding sections to avoid conflicting interpretations.' " *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 701 (Minn. 2012) (quoting *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000)). "[T]he legislature intends the entire statute to be effective and certain." Minn. Stat. § 645.17(2) (2014). Additionally, there is a presumption of consistent usage throughout a statute. *Langston v. Wilson McShane Corp.*, 776 N.W.2d 684, 690 (Minn. 2009) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)).

Many of the deer hunting statutes apply the statutory definition of "taking" to "take." For example, a person may only "take" deer with certain types of firearms. Minn. Stat. § 97B.031 (2014). A hunter may not "take" deer "when the person is under

12

the influence of alcohol." Minn. Stat. § 97B.065, subd. 1 (2014). A person may not "take" deer at night. Minn. Stat. § 97B.075, subd. 1 (2014). A person may not "take" deer from a platform "located within the right-of-way of an improved public highway." Minn. Stat. § 97B.325 (2014). It would be odd to read the statutes to prohibit only obtaining possession of deer at night, while intoxicated, or while in a stand next to a highway. Instead, these statutes clearly apply the statutory definition of "taking," not the common law definition of "take."

The high court of our sister state, another hotbed of deer hunting, reached the same conclusion when examining a statute without a definition of "take" or "taking." The Wisconsin Supreme Court held that the context of "taking" throughout Wisconsin's game laws compelled it "to conclude that 'take' or 'taking' includes those activities delineated under the definition of 'hunting' in [the statute], such as killing, shooting, shooting at, trapping, and pursuing." *See Wis. Citizens Concerned for Cranes & Doves v. Wis. Dep't of Natural Res.*, 677 N.W.2d 612, 627-28 (Wis. 2004). The same is true here.

Beyond deer hunting, the Minnesota game and fish laws use "take" in several different ways. In some statutes, "take" clearly requires the animal to be dead.[8] In other statutes, "take" clearly means something different.[9] Other statutory sections have

---

[8] *See, e.g.,* Minn. Stat. § 97B.303 (2014) ("An individual who legally takes a deer may donate the deer [to a licensed meat processor]."); Minn. Stat. § 97B.415 (2014) ("A person may take a bear at any time to protect the person's property. . . . The bear may be disposed of as prescribed by the commissioner.").

[9] *See, e.g.,* Minn. Stat. § 97B.055, subd. 2 (2014) ("A person may not take a wild animal with a firearm or by archery from a motor vehicle . . . ."); Minn. Stat.

(Footnote continued on next page.)

"taking" or "hunting" in their headnotes but use "take" in the statutory language. *See* Minn. Stat. §§ 97B.101, 97B.105, 97B.415, 97B.655 (2014). Of course, statutory headnotes are "mere catchwords" and "are not part of the statute." Minn. Stat. § 645.49 (2014).

It may initially appear that the various uses of "take" are inconsistent, such that the presumption of consistent usage provides little guidance. However, each of the uses of "take" falls within the definition of "taking." *See* Minn. Stat. § 97A.015, subd. 47 (defining "taking" as pursuing, shooting, *or* killing, among other acts). For purposes of Minn. Stat. § 97B.301, subd. 1, the context requires us to apply the entire definition in section 97A.015, subdivision 47.

Schmid argues that such an application would result in another hunting statute, Minn. Stat. § 97B.041 (2014), being "rendered superfluous." We disagree. Minnesota Statutes § 97B.041 provides: "A person may not possess a firearm or ammunition outdoors during the period beginning the fifth day before the open firearms season and ending the second day after the close of the season within an area where deer may be taken by a firearm . . . ." Minn. Stat. § 97B.041(a). This prohibition is subject to several exceptions, most notably "if the person has a valid big game license in possession." *Id*. at

(Footnote continued from previous page.)
§ 97B.071(b) (2014) ("[A] person may not take small game . . . unless a visible portion of at least one article of the person's clothing above the waist is blaze orange."); Minn. Stat. § 97B.065, subd. 1(a) ("A person may not take wild animals with a firearm or by archery [if] the person is under the influence of alcohol . . . ."); Minn. Stat. § 97B.085 (2014) ("A person may not use radio equipment to take big game or small game."); Minn. Stat. § 97B.205, subd. 1 (2014) ("A person may not use a dog or horse to take big game.").

14

(a)(1). While it is true that many instances of "taking" a deer without a license would also violate Minn. Stat. § 97B.041, there are material differences between the two statutes. For example, a person may violate Minn. Stat. § 97B.041 by merely possessing a firearm or ammunition in a field, regardless of whether the person is "taking" deer. Minnesota Statutes § 97B.301 on the other hand, criminalizes more serious offenses, such as unlawfully pursuing a deer, shooting at a deer, or killing a deer. The Legislature accordingly prescribes different penalties for violations of the two statutes. Although a violation of either statute is a misdemeanor, Minn. Stat. § 97A.301, subd. 1, an individual who violates section 97B.301 will have one's license seized, and will be unable to obtain other types of big game licenses. *See* Minn. Stat. § 97A.420, subd. 1 (2014).

Because of the use of "taking" to define "take" throughout the game and fish laws, we again conclude that there is but one reasonable interpretation of Minn. Stat. § 97B.301, subd. 1: the statutory definition of "taking" in Minn. Stat. § 97A.015, subd. 47, applies to "take."

### III.

Because we hold that the statutory definition of "taking" applies to "take," we must next determine whether Schmid's actions violated the statute. We hold that, under the statutory definition of "taking," a jury could reasonably conclude that Schmid took deer by "pursuing" and "attempting to take" deer and therefore violated Minn. Stat. § 97B.301, subd. 1.

15

A.

The game and fish laws do not define "pursue." In this context, "pursue" means "[t]o follow in an effort to overtake or capture." *The American Heritage Dictionary* 1431 (5th ed. 2011).

Schmid took steps that in the aggregate constituted "pursuing" deer. Wearing blaze orange, he drove an ATV into a field, disguised himself in a blind, and possessed a loaded gun. And the jury could well have found probative Schmid's shifting explanations for his presence in the field: that he was, variously, party hunting, nature watching, coyote hunting, and waiting to load a carcass. Other courts have held that similar conduct constituted "pursuing." *See Passmore v. State*, 561 S.E.2d 123, 124 (Ga. Ct. App. 2001) (holding that a defendant who "turned the truck around and went back to the field [in order to shoot the deer]" was pursuing the deer); *State v. Hall*, 751 S.W.2d 403, 406 (Mo. Ct. App. 1988) (holding that a defendant was pursuing deer when he was in a truck with a spotlight panning over a field, and was in possession of a loaded weapon).[10] Thus, Schmid was "pursuing" deer.

---

[10] Schmid's actions and varying explanations contrast with those of the defendant in *State v. Ritter*, in which the court of appeals held that a person's presence near a hunting area while possessing an unloaded weapon did not constitute "pursuing," but rather constituted being on the "verge of pursuing." 486 N.W.2d 832, 834 (Minn. App. 1992), *rev. denied* (Minn. Aug. 27, 1992).

B.

Like "pursue," "attempt" is not defined by the game and fish laws. It is, however, defined in the criminal code as "an act which is a substantial step toward, and more than preparation for, the commission of the crime . . . ." Minn. Stat. § 609.17, subd. 1 (2014).

In *State v. O'Heron*, we upheld a conviction for taking waterfowl in open water as an "attempt to take." 250 Minn. 83, 85-86, 83 N.W.2d 785, 786-87 (1957). In that case, the defendants sat in a duck blind on the edge of a lake. *Id.* at 84, 83 N.W.2d at 786. Such actions constituted an attempt to take because the defendants took a substantial step toward taking ducks; they entered the ducks' territory with the means to immediately shoot them. *Id.* at 86, 83 N.W.2d at 787; *see also Blair v. State*, 696 S.W.2d 755, 758 (Ark. Ct. App. 1985) (holding that the evidence was sufficient to convict the defendant of attempting to take deer when he was found with dogs in a hunting area and possessed a gun loaded with buckshot). Thus, Schmid was "attempting to take" deer under the definition of "taking."

Nonetheless, Schmid argues that the State erred when it charged him under Minn. Stat. § 97B.301 for "attempting to take" deer instead of under the criminal attempt statute.[11] We clearly resolved that issue long ago in *State v. O'Heron*, 250 Minn. at 85-86, 83 N.W.2d at 786-87, in which we held that because "taking" in the game statute included an attempt to take, "both the taking of migratory waterfowl and the attempt to

---

[11]    Under section 97B.301, additional penalties can be imposed, such as the loss of hunting licenses, Minn. Stat. § 97A.420, subd. 1, and the seizure of weapons used to unlawfully take game, Minn. Stat. § 97A.221, subd. 1 (2014).

17

take, without being partially concealed by natural vegetation, are violations of [the statute]." We see no reason to hold otherwise today.

IV.

For these reasons, we affirm Schmid's conviction for taking deer without a license under Minn. Stat. § 97B.301, subd. 1.

Affirmed.